Pruner Estate.

Argued April 17, 1957. Before JONES, C. J., CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*John G. Love*, with him *John Russell, Jr., Love & Wilkinson* and *Morgan, Lewis & Bockius,* for appellant.

*Musser W. Gettig,* with him *B. C. Jones,* for appellees.

OPINION BY MR. JUSTICE COHEN, November 18, 1957:

In his last will and testament Edmund J. Pruner, of Centre County, Pennsylvania, devised real estate in trust to the boroughs of Tyrone and Bellefonte to establish a home for friendless children from the boroughs who were without parents. Whenever an excess of revenue became available for the support of such children, then qualified children from the City of Altoona were also to be admitted to the home. In the event that the boroughs for any reason could not carry out the provisions of the will the settlor provided that the property was to revert to his niece. Both boroughs by ordinances accepted the provisions of Pruner's will in 1905 and established a suitable home. In 1954, (for the third time),[1] the heirs of Pruner's niece instituted proceedings in the Orphans' Court of Centre County to terminate the trust. Notice of the action was served only upon the two boroughs. The heirs contended that the purposes of the trust could not be carried out and introduced evidence that no children had been cared for in the home during the past seven years. The orphans' court held that the trust could be terminated only upon a showing that there were no children from the area designated by the settlor who could qualify for the home either at present or at any time in the future. Hence, the court concluded that even though there were no children currently in the home the petitioners' evidence was insuf-

[1] In 1933 a similar petition was filed by the heirs and dismissed by the orphans' court. A petition to reopen the proceedings was refused in 1945.

ficient to prove the failure of the trust. From the order of the court refusing the prayers of the petitioners the present appeal has been taken.

In *Curry Appeal*, 390 Pa. 105, 108, 135 A. 2d 497 (1957), we reaffirmed the principle that unless a court has all parties in interest before it, by appearance or service of process, it cannot proceed to a binding decree. In this proceeding we are satisfied that no relief could have been granted the appellant because an indispensable party—the public—had not been given notice and brought upon the record through its representative and spokesman, the attorney general.[2]

The beneficiary of charitable trusts is the general public to whom the social and economic advantages of the trusts accrue.[3] But because the public is the object of the settlors' benefactions, private parties have insufficient financial interest in charitable trusts to oversee their enforcement.[4] Consequently, the Common-

---

[2] See text at note 5, infra. The trustees are not the proper nor adequate representatives of the public interest.

[3] See discussion and cases cited in Bogert, Proposed Legislation Regarding State Supervision of Charities, 52 Mich. L. Rev. 633 (1954).

[4] See Forer, Forgotten Funds: Suggesting Disclosure Laws for Charitable Funds, 105 U. of Pa. L. Rev. 1044, 1045 (1957); Bogert, op. cit. supra, note 2; 4 Scott, Trusts, §391 (2nd ed. 1956). See also *Wiegand v. The Barnes Foundation*, 374 Pa. 149, 97 A. 2d 81 (1953) (private party even with consent of attorney general has no standing to enforce trust unless special interest shown). This lack of private control over the administration of charitable trusts has given rise to serious problems of neglect, inaction and abuse which have aroused much attention in recent years. both in the United States and England. Forer, op. cit. supra; Bogert, op. cit. supra, note 2; Bushnell, Report and Recommendations, 30 Mass. L. Q. 22 (1945); Note, 21 U. Chi. L. Rev. 118 (1953); National Association of Attorneys General, Conference Proceedings (1946, 1953); 4 Scott, op. cit. supra, at §391. For English commentary see Report on the Committee on the Law and Practice Relating to

wealth itself must perform this function if charitable trusts are to be properly supervised. The responsibility for public supervision traditionally has been delegated to the attorney general to be performed as an exercise of his *parens patriae* powers. See *Commonwealth ex rel. Minerd v. Margiotti,* 325 Pa. 17, 23, 188 Atl. 524 (1936). These are the ancient powers of guardianship over persons under disability and of protectorship of the public interest which originally were held by the Crown of England as the "father of the country," 3 Blackstone, Commentaries 47; *Fontain v. Ravenel,* 58 U. S. (17 How.) 369 (1855), and which as part of the common law devolved upon the states and federal government. *Fontain v. Ravenel,* supra. Specifically, these powers permitted the sovereign, wherever necessary, to see to the proper establishment of charities through his officer, the attorney general, and to exercise supervisory jurisdiction over all charitable trusts. 3 Blackstone, Commentaries 427.

Our legislature recognized the historic interest of the attorney general in charitable trusts, as well as the benefits to be gained from his appearance in litigation affecting them, by requiring that he be given notice of proceedings for the application of *cy pres*: Act of April 24, 1947, P. L. 100, §10, 20 P. S. §301.10. This enactment did not enlarge the powers of the attorney general in *cy pres* proceedings, but rather statutorily affirmed his responsibility in such actions. For, not only in actions involving the application of *cy pres* but in every proceeding which affects a charitable trust, whether the action concerns invalidation, administration, termination or enforcement, the attorney general must be made a party of record because the public as

Charitable Trusts (1952), (Nathan Committee Report); Notes, 96 Sol. J. 816 (1952), 96 Sol. J. 813 (1952).

the real party in interest in the trust is otherwise not properly represented.[5]

This fundamental principle that the attorney general is an indispensable party in a proceeding such as the one before us should have compelled the orphans' court to refuse the present petition without considering the merits thereof, and any order granting relief to the petitioners would have been void.[6]

---

[5] In re *Los Angeles County Pioneers Society*, 40 Cal. 2d 852, 257 P. 2d 1 (1953) (voluntary dissolution of historical society); *Trustees of New Castle Common v. Gordy*, 33 Del. Ch. 196, 91 A. 2d 135 (1952) (sale of land constituting part of corpus of trust); *Carlisle v. Delaware Trust Co.*, 99 A. 2d 764 (Del. 1953) (validity of bequest attempting to create charitable trust); In re *Owen's Estate*, 244 Iowa 533, 57 N.W. 2d 193 (1953) (diversion of assets); *Thatcher v. St. Louis*, 343 Mo. 597, 122 S.W. 2d 915 (1938) (suit by heirs of settlor to terminate charitable trust for failure of purpose); *Rolfe & Rumford Asylum v. Lefebre*, 69 N. H. 238, 45 Atl. 1087 (1898) (construction of will and advice on trustee's duties); *Passaic Nat'l Bank & Trust Co. v. East Ridgelawn Cemetery*, 137 N. J. Eq. 603, 45 A. 2d 814 (1946) (construction of terms of trust); *Leo v. Armington*, 74 R. I. 124, 59 A. 2d 371 (1948) (construction of will); 5 Am. Jur., Attorney General, §17 (1936); Annotation, 62 A.L.R. 881, 887 (1929); 2A Bogert, Trusts and Trustees, §411 at 271, §417 (1953); 14 C.J.S. Charities, §62(b) (1939); 2 Restatement, Trusts, §391, comment f (1935); 4 Scott, Trusts, §391 (2nd ed. 1956).

[6] *Powell v. Shepard*, 381 Pa. 405, 113 A. 2d 261 (1955). ". . . a party is indispensable where his rights are so connected with the claims of the litigants that no decree can be made between them without impairing such rights. . . . The rule as to indispensable parties is neither technical nor one of convenience; it goes absolutely to the jurisdiction, and without their presence the court can grant no relief." *Hartley v. Langkamp & Elder*, 243 Pa. 550, 556, 90 Atl. 402 (1914). Accord: *Craig v. Craig*, 264 Pa. 380, 107 Atl. 719 (1919). "The governing motive of equity in the administration of its remedial system is to grant full relief, and to adjust in the one suit the rights and duties of all the parties, which really grow out of or are connected with the subject-matter of that suit." [Therefore, equity will not enter a decree which would be binding

534

Not only do the reversionary devisees who seek to invoke a forfeiture clause have the burden of proving by clear evidence a failure of the trust purpose,[7] they also have the duty to comply with all requisite procedures. Had the present petitioners done so in the *previous proceedings* by making the attorney general a party thereto so that he might have exercised his supervisory powers, appropriate measures might have been taken to have activated this charitable trust and so have restored to the public Pruner's beneficence.

Decree vacated and record remanded with a procedendo. Notice to be given to the attorney general and to the City of Altoona, and leave to be given all parties to introduce evidence. Costs to abide the event.

---

upon only some of the parties.] "The primary object is, that all persons sufficiently interested may be before the court, so that . . . all may be bound in respect thereto by the single decree." 1 Pomeroy, Equity Jurisprudence 152-153 (5th ed. Symons 1941). Cf. *Passaic Nat'l Bank & Trust Co. v. East Ridgelawn Cemetery*, supra, note 5 (appeal from decree of lower court upholding validity of trust dismissed without prejudice on showing that attorney general not a party to original proceeding).

[7] Cf. *Patterson's Estate*, 333 Pa. 92, 3 A. 2d 320 (1939) (on action to terminate trust because purposes not being carried out as settlor directed, burden of proving non-compliance by clear evidence is on the moving party).