STONYBROOK TENANTS ASSOCIA-
TION, INCORPORATED, George F.
Wright, Earl M. Gleason, John A. Mata-
razzo, and Earl McMaugh Barnes, Plain-
tiffs,

v.

Hyman ALPERT and Joseph Alpert, In-
dividually and d/b/a Stonybrook Gar-
dens Company, and Stonybrook Gar-
dens, Incorporated, and Stonybrook, In-
corporated, Defendants.

Civ. 8604.

United States District Court
D. Connecticut.

May 31, 1961.

Theodore I. Koskoff, Bridgeport, Conn., and Frank J. Hennessy, Stratford, Conn., for plaintiffs.

Hugh A. Hoyt, Bridgeport, Conn., Francis M. Shea and Alfred L. Scanlan, Washington, D. C., for defendants.

TIMBERS, District Judge.

Plaintiffs[1] move, pursuant to 28 U.S. C. § 1447, to remand this case to the Superior Court for Fairfield County, from which it was removed to this Court, pursuant to 28 U.S.C. § 1441, by defendants Hyman Alpert and Joseph Alpert.

### Question

The question presented by the motion to remand is whether two inactive Connecticut corporations named as defendants—both of which have been liquidated, have neither assets nor liabilities and are in the process of dissolution— are necessary or indispensable parties defendant so as to destroy requisite diversity of citizenship.

The Court holds that this question must be answered in the negative and accordingly denies the motion to remand.

### Facts

Facts dispositive of this motion are set forth in the complaint originally filed in the Superior Court, the agreement of August 17, 1959 (Exhibit A referred to in the complaint) and the verified removal petition.

---

1. The parties will be referred to as "plaintiffs" and "defendants" as named in the Superior Court action, although in the removal petition and the instant motion to remand the original plaintiffs are designated as "respondents" and the two original defendants who removed the action are designated as "petitioners".

*Nature of this Action*

The action is brought to enforce a written agreement entered into August 17, 1959 between defendants in this action (referred to as "Parties of the First Part") and plaintiffs in this action (referred to as "Parties of the Second Part"). The agreement provided, among other things, for the settlement of certain litigation arising out of the operation of Stonybrook Gardens, a 400 unit housing development in Stratford, Connecticut; for the sale of individual housing units in Stonybrook Gardens upon specified terms and conditions; for cooperation between the parties in attempting to work out a sale to plaintiffs of Stonybrook Gardens as a cooperative; and for certain maintenance, repairs, renovations and painting of the property.

Relief sought in this action, in addition to a claim of $400,000 damages, includes equitable relief in the form of an injunction ordering defendants to complete certain repairs, renovations and painting; to maintain the premises properly; to refrain from proceeding with summary process actions and from instituting new ones; to cooperate in working out a sale of the property to a cooperative, including securing the necessary financing; and to sell the property to a cooperative at a price to be determined by the Court.

*Events Preceding this Action*

Stonybrook Gardens was built during 1941 and 1942 as a permanent defense housing project, pursuant to the Lanham Act, 54 Stat. 1125 (1940), 42 U.S.C. §§ 1521–1524. Upon completion, it was placed under control of the Bridgeport Housing Authority. On June 30, 1943 it was placed under control of the Stratford Housing Authority. Both housing authorities were agents of the Public Housing Administration, an instrumentality of the United States.

On January 17, 1956 Stonybrook Gardens, having been put up for public sale by the Public Housing Administration pursuant to the Lanham Act, was sold to Stonybrook Gardens, Inc., a Connecticut corporation, for $1,327,492. The Public Housing Administration was paid $200,000 in cash and accepted a purchase-money mortgage note, secured by a mortgage on the premises, for the remainder of the purchase price.

On December 31, 1956 the interest of Stonybrook Gardens, Inc. in the property was conveyed outright to Hyman Alpert and Joseph Alpert (hereinafter "the Alperts") who were doing business under the name of Stonybrook Gardens Company, a New York partnership.

On January 10, 1957 the property was conveyed by the Alperts to Stonybrook, Inc., a Connecticut corporation, under an arrangement whereby this corporation was to act as nominee for the Alperts for the sole purpose of holding title to the property; the Alperts were to receive all income from the property, were to be responsible for all expenses of operating the property and were to assume all liabilities of the corporation arising from its holding title to the property.

On May 21, 1959 all interest of Stonybrook, Inc. in the property was conveyed outright to the Alperts.

On August 17, 1959 the agreement referred to above was executed.

*Parties to this Action*

All named individual plaintiffs are citizens and residents of Connecticut.[2]

---

2. The complaint alleges that the named individual plaintiffs "bring this action both individually and under Section 52–105 of the General Statutes on behalf of some 300 other individuals having identical claims."

The statute referred to (Conn.Gen. Stat., ch. 898, § 52–105 (1958)) reads: "When persons who might be made parties are very numerous, so that it would be impracticable or unreasonably expensive to make them all parties, one or more may sue or be sued or may be authorized by the court to defend for the benefit of all."

Representation by the individual plaintiffs of "some 300 other individuals having identical claims" does not affect the diversity jurisdiction of this Court, since the action will be regarded as a class action. Rule 23(a), Fed.R.Civ.P., 28 U.S.C.A.; 3 Moore's Federal Practice, ¶¶ 23.01–23.14, pp. 3404–3488 (2d ed. 1948); cf. Matthies v. Seymour Manufacturing Company, 2 Cir., 1959, 270 F. 2d 365, certiorari denied 1960, 361 U.S. 962, 80 S.Ct. 591, 4 L.Ed.2d 544.

Plaintiff, Stonybrook Tenants Association, Inc., is an incorporated Connecticut association, all of whose members reside in Stonybrook Gardens and are Connecticut citizens.

The two named individual defendants, Hyman Alpert and Joseph Alpert, are citizens and residents of New York. They do business under the name of Stonybrook Gardens Company, a New York partnership with its principal place of business in Brooklyn, New York. The partnership owns and operates Stonybrook Gardens, the housing project referred to above.

The two named corporate defendants, Stonybrook Gardens, Inc. and Stonybrook, Inc., are Connecticut corporations whose present status and interest in this action will be summarized below.

### Interests of Defendants in this Action

The individual defendants—the Alperts—are the sole owners and operators of Stonybrook Gardens and have been continuously since execution of the agreement of August 17, 1959. Since December 31, 1956 they have owned the equitable title to the property and during this period have collected all rents from the property; have paid all taxes on the property; have brought eviction proceedings and other actions against tenants of the property; and have been responsible for all expenses of operating the property, including maintenance, repairs and renovations.

Defendant Stonybrook Gardens, Inc. had an active corporate existence from January 17, 1956 (the date it purchased Stonybrook Gardens from the Public Housing Administration) to December 31, 1956 (the date it conveyed its interest in the property to the Alperts). This corporation has been inactive since December 31, 1956; has no assets or liabilities; and is now in process of dissolution.

Defendant Stonybrook, Inc. held legal title to Stonybrook Gardens from January 10, 1957 (the date the Alperts conveyed the property to it under the arrangement referred to above) to May 21, 1959 (the date it conveyed its interest in the property to the Alperts). This corporation has been inactive since May 21, 1959; has no assets or liabilities; and is now in process of dissolution.

### Controlling Statutory and Decisional Law

■ Defendants removed this case from the Superior Court for Fairfield County to this Court pursuant to 28 U.S. C. § 1441(a),[3] invoking the jurisdiction of this Court pursuant to 28 U.S.C. § 1332(a) (1)[4] on the ground that requisite diversity of citizenship exists and the requisite jurisdictional amount is involved.[5]

---

3. "Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

4. "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between—
 "(1) Citizens of different States;"

5. Plaintiffs argue that the 1958 amendments to 28 U.S.C. § 1332 (July 25, 1958, Pub.L. 85–554, § 2, 72 Stat. 415) increasing the jurisdictional amount to $10,000 and declaring a corporation to be deemed a citizen of the State where it has its principal place of business as well as of the State of its incorporation "indicate an intention to restrict removal of cases". The Court does not agree.

 Access to the federal courts is a matter of right, not of grace. The Congressional action reflected in the 1958 amendments referred to did make important changes in the jurisdiction of the federal courts. But the scope of federal jurisdiction must be determined in just that way—by Congressional action, not by judicial fiat.

 Significantly, relevant to the question presented by the instant motion to remand, Congress must be presumed, in enacting the 1958 amendments, to have been aware of the well settled federal

In view of the $400,000 claim for damages, there is no issue as to jurisdictional amount. The sole issue is whether diversity of citizenship exists by reason of the two inactive Connecticut corporations named as defendants, all plaintiffs being Connecticut citizens and the two individual defendants being New York citizens.

■ Requisite diversity jurisdiction exists if all parties on one side are of citizenship diverse to that of all parties on the other side. Strawbridge v. Curtiss, 1806, 3 Cranch 267, 7 U.S. 267, 2 L.Ed. 435; In re Removal Cases, 1879, 100 U.S. 457, 468–470, 25 L.Ed. 593; Salem Trust Company v. Manufacturers' Finance Company, 1924, 264 U.S. 182, 189, 44 S.Ct. 266, 68 L.Ed. 628; City of Indianapolis v. Chase National Bank, 1941, 314 U.S. 63, 69, 62 S.Ct. 15, 86 L.Ed. 47. In a removal case, such diversity must exist at the time suit is commenced and at the time the removal petition is filed. Yulee v. Vose, 1878, 99 U.S. 539, 25 L.Ed. 355.

■ The right of removal cannot be defeated by joining unnecessary or dispensable parties. Salem Trust Company v. Manufacturers' Finance Company, supra, 264 U.S. at pages 189–190, 44 S.Ct. 266; Olsen v. Jacklowitz, 2 Cir., 1935, 74 F.2d 718, 719. In the Salem Trust Company case, the Supreme Court stated (264 U.S. 182, 189–190, 44 S.Ct. 266, 267):

"District Courts have jurisdiction if all the parties on the one side are of citizenship diverse to those on the other side. Jurisdiction cannot be defeated by joining formal or unnecessary parties. The right of removal depends upon the case disclosed by the pleadings when the petition therefor is filed, (Barney v. Latham, 103 U.S. 205, 215 [26 L.Ed. 514]; Ex parte Nebraska, 209 U.S. 436, 444 [28 S.Ct. 581, 52 L.Ed. 876]) and

is not affected by the fact that one of the defendants is a citizen of the same state as the plaintiff, if that defendant is not an indispensable party to the controversy between plaintiff and defendant who are citizens of different States. Barney v. Latham, supra [103 U.S.] 213."

■ Moreover, nominal or formal parties, being neither necessary nor indispensable, are not required to join in the petition for removal. Shattuck v. North British & Mercantile Insurance Company, 8 Cir., 1893, 58 F. 609, 610.

■ For purposes of determining whether requisite diversity of citizenship exists, the courts look to the citizenship of the real parties in interest and disregard the citizenship of nominal or formal parties having no real interest in the controversy. In Hann v. City of Clinton, 10 Cir., 1942, 131 F.2d 978, 981, the court stated:

"In determining the question whether diversity of citizenship requisite to jurisdiction exists, a court looks to the citizenship of the real parties in interest; and where there is complete diversity between them, the presence of a nominal party with no real interest in the controversy will be disregarded. Jurisdiction is not ousted by the joinder or nonjoinder of mere formal parties."

Professor Moore states (3 Moore's Federal Practice, ¶17.04, p. 1312 (2d ed. 1948)) that "* * * the citizenship of the real party in interest controls where jurisdiction is based upon the character of the parties as in diversity and alienage cases" and (Id., ¶17.04, p. 1315) "* * * the citizenship of formal parties, with no real interest in the controversy, does not affect the jurisdiction. Such are parties holding the naked legal title, with no actual interest or control over the subject-matter of the litigation,

decisional law that diversity jurisdiction cannot be destroyed by the presence of nominal or formal parties who are neither necessary nor indispensable. Had Congress intended to restrict the juris-

diction of the federal courts in the manner plaintiffs suggest, Congress could have so acted. But it did not.

See 1958 U.S.Code Cong. and Adm. News, pp. 3099–3136.

when all the equitable interests are therein represented."

Applying the classic definition of necessary and indispensable parties [6] to the question of diversity in determining whether a case has been properly removed, the court in Leadman v. Fidelity & Casualty Company of New York, D.C. S.D.W.Va.1950, 92 F.Supp. 782, 784, stated:

"In determining questions of removability, only indispensable and necessary parties are considered. Nominal or formal parties are disregarded. As plaintiff contends, the courts have uniformly defined indispensable parties as those who have such an interest in the subject matter that a final decree cannot be made without either affecting their interests or leaving the controversy in such condition that a final determination may be wholly inconsistent with equity and good conscience. [citations] But that principle is inapplicable to the facts of the instant case, since it is clear that the Court can proceed to final judgment without affecting any interest of the principals, and without reaching a result that would be inequitable as to any of the parties."

While the precise question here presented does not appear to have been the subject of a reported decision in this district, the principles believed by this Court to be controlling have long been settled in this district. In Abbot v. American Hard Rubber Company, C.C.D.Conn.1861, 1 Fed.Cas. p. 13 (No. 9), Judge William D. Shipman, citing Shields v. Barrow,

supra, and noting the three classes of parties in equitable actions—formal parties, necessary parties and indispensable parties—stated that the federal courts "will always dispense with merely formal parties" (referring, there, to formal parties beyond the reach of process). In Overman Wheel Company v. Pope Manufacturing Company, C.C.D.Conn. 1891, 46 F. 577, 578, Judge Nathaniel Shipman, in denying a motion to remand, held that the citizenship of a party having "no personal interest in the controversy * * * is of no importance with respect to the defendant's right of removal". In Smith v. Aeolian Company, D.C.D.Conn.1943, 53 F.Supp. 636, 637, 639, Judge Smith, in denying defendant's motion to dismiss for lack of jurisdiction, rejected the claim that the directors of the defendant corporation were individually indispensable parties to the action and that, since they could not be joined without destroying diversity of citizenship, the action should be dismissed; the Court pointed out that "No decree against the directors personally is necessary to accomplish the relief sought in the 4th prayer".

### Application of Law to Facts of This Case

 Determination of whether a party is necessary or indispensable for jurisdictional purposes is to be made "on practical considerations". Shaughnessy v. Pedreiro, 1955, 349 U.S. 48, 54, 75 S.Ct. 591, 595, 99 L.Ed. 868; Williams v. Fanning, 1947, 332 U.S. 490, 68 S.Ct. 188, 92 L.Ed. 95; Gaw v. Higham, 6 Cir., 1959, 267 F.2d 355, 357, certiorari denied 1959, 360 U.S. 933, 79 S.Ct. 1453, 3 L.Ed.

---

6. Shields v. Barrow, 1854, 17 How. 129, 130, 139, 58 U.S. 129, 130, 139, 15 L. Ed. 158:

"The court here points out three classes of parties to a bill in equity. They are: 1. Formal parties. 2. Persons having an interest in the controversy, and who ought to be made parties, in order that the court may act on that rule which requires it to decide on, and finally determine the entire controversy, and do complete justice, by adjusting all the rights involved in it. These persons are commonly termed necessary parties;

but if their interests are separable from those of the parties before the court, so that the court can proceed to a decree, and do complete and final justice, without affecting other persons not before the court, the latter are not indispensable parties. 3. Persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience."

2d 1546. It is the duty of the court in determining whether there is requisite diversity of citizenship "to arrange the parties with respect to the actual controversy, looking beyond the formal arrangement made by the bill." Helm v. Zarecor, 1911, 222 U.S. 32, 36, 32 S.Ct. 10, 12, 56 L.Ed. 77.

The *practical considerations* arising out of the *actual controversy* in the instant case which determine whether the inactive Connecticut corporations named as defendants are necessary or indispensable parties, are the following:

*Their Interest in the Subject Matter of the Agreement of August 17, 1959*

Neither of the corporate defendants had any interest in Stonybrook Gardens at the time the agreement of August 17, 1959 was executed nor at any subsequent time. The agreement preserves a disclaimer by both corporations of any interest in the property, reflecting in turn a disclaimer of interest by these corporations asserted in an earlier action in this Court.[7] In Grant County Deposit Bank v. McCampbell, 6 Cir., 1952, 194 F.2d 469, 473, 31 A.L.R.2d 909, it was held that "A disclaimer of all interest in the action changes a party from an indispensable one to an unnecessary party" for purposes of determining diversity jurisdiction.

The reason these two corporations were included as parties to the agreement of August 17, 1959 is that they were required by the terms of the agreement to execute certain releases, since they had been parties to earlier litigation the settlement of which was one of the objectives of the agreement. Having executed such releases, they have performed all duties of which they are capable under the agreement. Their presence as parties to the agreement for that limited purpose does not make them necessary parties to all future litigation arising out of the agreement. In Mayor and City Council of Baltimore v. Weinberg, D.C.D.Md.1961, 190 F.Supp. 140, 142, the court held that, although the presence in a condemnation suit of a mortgagee (whose citizenship would destroy diversity) was required when suit was commenced in the state court, nevertheless, since the mortgage had been satisfied prior to commencement of suit and the release of the mortgage had been recorded just prior to filing the removal petition, such mortgagee "was not a necessary party and should be disregarded in determining whether there is diversity of citizenship between the real parties in interest."

*Their Interest in the Claims Asserted in the Present Action*

Since neither of the corporate defendants had any interest in Stonybrook Gardens at the time the agreement was executed nor at any subsequent time, they have no interest in the claims asserted in this action which is essentially one to enforce the agreement of August 17, 1959.

Specifically, none of the relief sought in the present action would be of any avail as against the corporate defendants. Having been liquidated and being without assets, they could not respond to plaintiffs' claim of damages if established. With respect to the equitable relief sought, these inactive corporations which amount to nothing more than corporate shells could not be required to complete certain repairs, renovations and painting; they could not be required to maintain the premises properly; they could not be required to refrain from proceeding with summary process actions and from instituting new ones; they could not be required to cooperate in working out a sale of the property to a cooperative, including securing the necessary financing; and they could not be required to sell the property to a

---

7. Paragraph I(A) of the agreement of August 17, 1959 contains the following provision:

"The inclusion of Stonybrook Gardens, Inc. and Stonybrook, Inc. as Parties to this Agreement is not to be considered as a waiver, disavowal or repudiation of any position taken, or of any allegation of non-interest asserted by either of these companies in an amended complaint filed with the United States District Court for the District of Connecticut in Civil Action No. 7837, Alpert et al. v. Wright et al."

cooperative at a price to be determined by the Court.

In short, each of the claims for relief here sought, assuming plaintiffs establish their right to such relief, could be effectively enforced only against the individual defendants; such relief, in each instance, would be wholly ineffective against the corporate defendants.

*Whether the Court Can Enter a Final Judgment Consistent With Equity and Good Conscience Without the Presence of the Corporate Defendants*

 The ultimate test of whether the corporate defendants are necessary or indispensable parties to this action, in determining whether requisite diversity of citizenship exists, is whether, in the absence of the two corporate defendants, the Court can enter a final judgment consistent with equity and good conscience which would not be in any way unfair or inequitable to plaintiffs. The Court holds that it can do so.

 The closest case in point which has been brought to the attention of the Court is Wellman v. Howland Coal & Iron Works, C.C.D.Ky.1884, 19 F. 51. That action was brought to recover from a stockholder his unpaid subscription for corporate stock. On a motion to remand, the claim was made that the federal court lacked requisite diversity jurisdiction because of the citizenship of the corporation which had issued the stock. In overruling the motion to remand, the court held that, even though the corporation still retained a legal existence, had the power to reorganize, could sue and be¹ sued and could collect the unpaid stock subscription which it could then apply to the payment of the debts of the company, nevertheless, since it had no assets, no organization, no officials and no agents, the corporation was "not an actual one" and was "only a nominal party, if a party at all". The court stated (19 F. 51, 52):

> "In its present condition no personal judgment could be rendered against the company, and it is exceedingly doubtful whether the company will be bound by the judgment should one be rendered against [the subscriber] * * *. While, therefore, this corporation is not defunct, it has no living, active existence, although in law it may survive sufficiently to have the power of reorganization for some purposes. Its present *status* makes the reasons which apply to a defunct corporation apply to this one. The [corporation] is only a nominal party, if a party at all."

While the Wellman case is an old one, it has not been overruled and, in the opinion of this Court, is sound law. It is as squarely applicable to the facts of the instant case as any authority this Court has been able to discover.[8]

---

8. Counsel for defendants suggest an independent reason why Stonybrook Gardens, Inc. and Stonybrook, Inc., are neither indispensable nor necessary parties to this action. They point out that the joinder as a defendant, in an action brought in a state court, of a corporation which has been dissolved will be disregarded in determining whether the action can be removed. State of Missouri v. A. B. Collins & Co., D.C.W.D.Mo. 1940, 34 F.Supp. 550; cf., Edgerton v. Armour & Co., D.C.S.D.Cal.1950, 94 F. Supp. 549. They further note that in other circumstances where practical considerations are controlling, as in the field of federal income taxation, the rule is well established that a corporation which has been liquidated and has no assets will be regarded as "dissolved de facto" even though formal dissolution has not occurred. "If it appears that a corporation is a corporation in name and semblance only, without corporate substance and serves no real corporate purpose, it must, though not formally dissolved, be treated as dissolved de facto." Wier Long Leaf Lumber Co. v. Commissioner, 5 Cir., 1949, 173 F.2d 549, 551. See, also, Henry Hess Co. v. C. I. R., 1951, 16 T.C. 1363, modified 9 Cir., 1954, 210 F.2d 553; The Cold Metal Process Co. v. C. I. R., 1956, 25 T.C. 1333, reversed on other grounds, 6 Cir., 1957, 247 F.2d 864; Novo Trading Corporation v. Commissioner, 2 Cir., 1940, 113 F.2d 320; Telephone Directory Advertising Co. v. United States, 1956, 142 F.Supp. 884, 135 Ct.Cl. 670.

### Conclusion

The Court holds that Stonybrook Gardens, Inc. and Stonybrook, Inc. are no more than formal, nominal parties to this action; that they are neither necessary nor indispensable parties; that their Connecticut citizenship does not destroy requisite diversity of citizenship; that, since the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and since all parties on one side are of citizenship diverse to that of all parties on the other side, this is a civil action over which this Court would have had original jurisdiction; and that the action therefore was properly removed to this Court.

The motion to remand is denied. An order accordingly has been entered.