**The GLENMEDE TRUST COMPANY, Trustee of the Pew Memorial Trust, and International Paper Company, Plaintiffs,**

and

**Israel Packel, Attorney General of the Commonwealth of Pennsylvania, as Parens Patriae, Nominal Plaintiff,**

v.

**The DOW CHEMICAL COMPANY and General Crude Oil Company, Defendants.**

**Civ. A. No. 74–2345.**

United States District Court, E. D. Pennsylvania.

Oct. 25, 1974.

John G. Harkins, Jr., Pepper, Hamilton & Scheetz, Philadelphia, Pa., for Glenmede Trust Co.

Henry W. Sawyer, III, Morris R. Brooke, Drinker, Biddle & Reath, Philadelphia, Pa., for International Paper Co.

Israel Packel, Atty. Gen. of Pa., Harrisburg, Pa., for Israel Packel, Attorney General of Pa.

George J. Miller, Dechert, Price & Rhoads, Philadelphia, Pa., for Dow Chemical Co.

Harold E. Kohn, Stuart H. Savett, Arthur Makadon, Philadelphia, Pa., for General Crude Oil Co.

## MEMORANDUM AND ORDER

BRODERICK, District Judge.

Currently before the Court is plaintiffs' Motion to Remand this suit to the Orphans' Court Division of the Court of Common Pleas for the County of Philadelphia. Oral argument was held on the 3rd day of October, 1974.

This action was originally filed in the Orphans' Court on September 4, 1974 by Glenmede Trust Company under the caption "In The Matter Of THE PEW MEMORIAL TRUST." In the state court action Glenmede Trust Company sought a declaratory judgment and petitioned the Court for a "Citation to Show Cause Why an Agreement for Sale of Stock Should Not Be Approved." Cited as respondents in the state court petition were the following: The Honorable Israel Packel, Attorney General of the Commonwealth of Pennsylvania, as *parens patriae*; The Dow Chemical Company; International Paper Company; and General Crude Oil Company. On September 10th, General Crude Oil Company, and on September 11th, Dow Chemical Company filed petitions to remove the case to this Court on the basis of diversity jurisdiction, rearranging the caption so that it reads as above. The citizenship of the parties is as follows: Glenmede Trust Company (Glenmede) is a trust company without banking powers incorporated under the laws of Pennsylvania with its principal place of business in Pennsylvania; International Paper Company (IPCo.) is a corporation organized under the laws of the State of New York with its principal place of business in that State; Israel Packel, Attorney General of the Commonwealth of Pennsylvania, is either a Pennsylvania citizen and/or the Commonwealth of Pennsylvania; The Dow Chemical Company (Dow) is a corporation organized under the laws of the State of Delaware with its principal place of business in Midland, Michigan; General Crude Oil Company (General Crude) is a corporation organized under the laws of the State of Delaware with its principal place of business in the State of Texas.

Glenmede is the trustee of the Pew Memorial Trust, a charitable trust, set up under the Laws of the Commonwealth of Pennsylvania. Glenmede decided in January of 1974 to sell its holdings in General Crude which consisted of 5,564,357 shares of common stock, representing 63% of the common stock of General Crude. The General Crude stock is a substantial portion of the assets of the Pew Memorial Trust. In February of 1974, Glenmede was contacted by IPCo. concerning IPCo.'s desire to purchase all of the shares of General Crude held by Glenmede. On July 8, 1974, the Board of Glenmede met to consider an offer by IPCo. and on July 9, 1974, conditionally approved the offer subject to Glenmede's receiving a more advantageous offer. IPCo., however, withdrew its offer on July 10, 1974. On

August 12, 1974, Dow presented to the Board of General Crude a merger proposal conditioned on Glenmede's committing itself to vote its General Crude shares in favor of the merger proposal at a stockholders' meeting. The Dow proposal was to purchase the General Crude stock in exchange for Dow stock at the rate of $45 per each share of General Crude. On the morning of August 16th, immediately prior to the Glenmede Board meeting at which the Dow proposal was to be considered, representatives of IPCo. made an offer to purchase the Pew Memorial Trust's General Crude shares at a price of $45 per share, payable in cash and IPCo. notes. In the course of the August 16th meeting, the IPCo. offer was raised to $47.50 per share. Glenmede's Board voted, however, to accept the Dow proposal and to commit the Trust to vote its shares of General Crude in favor of the Dow merger proposal. After adjournment of the Board meeting, IPCo. informed Glenmede that it would raise its offer to $50 per share. After being so advised by IPCo., Glenmede delivered a letter to Dow indicating that the Board had committed Glenmede to vote its shares of General Crude in favor of the Dow merger proposal *"subject to such obligations as may be imposed upon the trustees pursuant to the laws of the Commonwealth of Pennsylvania respecting fiduciaries."* At the same time, Dow was informed by Glenmede of a higher offer made by IPCo. On August 18, 1974, IPCo. delivered an agreement dated August 16, 1974 to purchase the General Crude common stock held by the Trust, at a cash price of $50 per share. On September 4, 1974, Glenmede's Board adopted resolutions withdrawing from its August 16, 1974 commitment to Dow and accepting the IPCo. agreement dated August 16, 1974, subject to the following condition.

The Sale of the Shares to the Subsidiary under this Agreement shall have been approved by a final order or judgment of the Orphans' Court Division of a Court of Common Pleas in Pennsylvania (the "Orphans' Court") or any appellate court to which an appeal may be taken from such an order or judgment, or there shall be a termination of any such proceeding without disapproval of the sale of the Shares to the Subsidiary; provided, however, that a final order or judgment of any other court of competent jurisdiction, after exhaustion of appeals, having the effect of approving the sale of the Shares to the Subsidiary shall satisfy this condition; and provided further that a final order or judgment of the Orphans' Court or other court of competent jurisdiction, after exhaustion of appeals, having the effect of holding Seller's letter of August 16, 1974 to The Dow Chemical Company to be a binding and enforceable contract shall be considered a disapproval of the sale of the Shares to the Subsidiary.

On September 4, 1974, Glenmede filed its Petition for Citation in the Court of Common Pleas, Philadelphia County, Orphans' Court Division, seeking a decree to the effect:

That The Dow Chemical Company has no right or claim whatsoever to the General Crude Oil Company stock held by Petitioner as Trustee of The Pew Memorial Trust and no rights or claims accrue under or by virtue of Petitioner's August 16, 1974 letter to The Dow Chemical Company, and that the sale of Petitioner's General Crude stock to International Paper Company is approved in accordance with the September 4, 1974 resolution of Petitioner's Board of Directors. (Orphans' Court Petition, p. 14.)

On September 10, 1974 General Crude, and on September 11, 1974 Dow filed petitions to remove the Orphans' Court action to this Court on the basis of diversity of citizenship. Glenmede and IPCo. subsequently filed Motions to Remand contending this Court lacked the diversity required to retain jurisdiction and also lacked subject matter jurisdiction.

Subsequent to the removal of the action to this Court, Dow delivered to this Court a copy of the following public announcement made by Dow:

Dow Chemical announced that it gave notice to General Crude of termination of the merger agreement entered into August 12, under which General Crude would have been merged with the Dow Chemical unit. Dow said the reason for the termination was the delay in closing due to litigation resulting from the September 4 action of Glenmede Trust, trustee for the Pew Memorial Trust, owner of 63% of General Crude in withdrawing from its agreement with Dow Chemical approving the merger and agreeing to sell its General Crude stock to IPCO.

Dow said it would continue its litigation in U. S. District Court in Philadelphia seeking damages against Glenmede for breach of contract and against IPCo. for inducing breach.

On October 16, 1974, defendant General Crude informed the Court that it was no longer opposing the remand of this case to the Orphans' Court.[1]

It is noted that in the removal petition, Dow and General Crude have aligned the parties so that Dow and General Crude appear as defendants and Glenmede, IPCo., and the Attorney General appear as plaintiffs. This alignment of the parties is in accordance with their contention that such alignment represents the real interest of the parties in the litigation, and therefore there is diversity jurisdiction. Dow and General Crude further contend that the Attorney General of Pennsylvania is a mere nominal party and not a necessary or indispensable party to the action and should not be considered in determining whether diversity jurisdiction exists. On the other hand, Glenmede, IPCo. and the Attorney General contend that the

alignment of the parties should remain as it was in the Orphans' Court proceeding; i. e., Glenmede as plaintiff and all the other parties as defendants. They further argue that the Attorney General is the *alter ego* of the state and as such is a necessary and indispensable party to this action whose presence in the case must be considered in determining whether removal was improvident.

28 U.S.C. § 1441, the Removal Statute with which we are concerned, reads as follows:

(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court *of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants,* to the district court of the United States for the district and division embracing the place where such action is pending. (Emphasis added.)

(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. *Any other action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.* (Emphasis added.)

■ A District Court must determine the propriety of the removal of a case only after it has realigned the parties according to their actual interests in the suit. City of Indianapolis v. Chase National Bank, 314 U.S. 63, 62 S.Ct. 15, 86 L.Ed. 47 (1941); Removal Cases, 100 U.S. 457, 25 L.Ed. 593 (1879); Sands v. Geller, 321 F.Supp. 558 (S.D.N.Y.1971); First National Bank of Chicago v. Motolla, 302 F.Supp. 785 (N.D.Ill.1969). The Court is not bound by the technical form of the state court proceeding, City

---

1. In light of this Court's ultimate disposition of the Remand Motions, the effect, if any, of this subsequent announcement by General Crude has not been considered. See 1A

Moore's Federal Practice § 0.157 [12] at 155 and § 0.161 [1] at 208; First National Bank of Chicago v. Ettlinger, 465 F.2d 343 (7th Cir. 1972).

of New York v. Evigo Corp., 121 F. Supp. 748, 750 (S.D.N.Y.1954), but is obligated to ascertain the underlying substantive interests of the parties in dispute and arrange the parties according to their actual interest in the controversy. City of Indianapolis v. Chase National Bank, *supra*; Helm v. Zarecor, 222 U.S. 32, 32 S.Ct. 10, 56 L.Ed. 77 (1911).

■ One of the principal purposes of this suit is to determine whether Glenmede may finalize the sale of its General Crude stock to IPCo. in light of its alleged prior commitment to Dow. It is clear from the title of the petition for citation in the Orphans' Court [2] and the relief prayed for in that petition [3] that IPCo. and Glenmede desire to have the sale to IPCo. approved by the Orphans' Court. Glenmede stated in its Orphans' Court petition that it considers the sale to IPCo. to be of greater advantage to the Trust and to its charitable beneficiaries. (Petition, para. 31) There is no doubt that Glenmede and IPCo. want the sale to IPCo. approved. Therefore, the Court finds IPCo. should be aligned as a party plaintiff. Union Construction Co. v. Dillingham Corp., 334 F.Supp. 502 (S.D.Texas 1971).

■ We must now consider how the Attorney General should be aligned in this action. Under Pennsylvania law, the Attorney General is charged with the duty of inquiring into the status, activities and functions of charitable trusts, and no trust is permitted to declare itself charitable without submitting to the supervision and inspection of the Attorney General. Commonwealth v. Barnes Foundation, 398 Pa. 458, 159 A. 2d 500 (1960); Commonwealth v. Brown, 260 F.Supp. 323 (E.D.Pa.1966). The public is the beneficiary of all charitable trusts in Pennsylvania and the Attorney General, acting for the Commonwealth, has been delegated the responsibility of protecting the public in all transactions involving charitable trusts. Pruner's Estate, 390 Pa. 529, 136 A.2d 107 (1957). Therefore, in this action, the Attorney General is under a duty to scrutinize the sale of the General Crude stock to IPCo. and determine whether the sale is in the best interest of the beneficiaries. This being the duty of the Attorney General, this Court should not usurp his responsibility by aligning him with the plaintiffs. This would be tantamount to a finding herein that the sale to IPCo. was in the best interests of the beneficiaries which he represents.

Dow and General Crude argue that the statements made by the Attorney General after Glenmede filed its petition in the Orphans' Court indicate that he should be aligned with the plaintiffs.[4] Dow and General Crude contend that the Court is free to examine all the facts surrounding the controversy which may be relevant to the parties' ultimate alignment and that on this basis this Court should find that the Attorney General's position is more compatible with Glenmede and IPCo.

It is true that some courts have stated that a district court should go "beyond the pleadings" to arrange the parties according to their real interests in the dispute. See City of Indianapolis v. Chase National Bank, 314 U.S. 63, 62 S.Ct. 15, 86 L.Ed. 47 (1941); First National Bank of Chicago v. Motolla, 302 F.2d 785 (N.D.Ill.1969).[5] However, our ex-

2. The title reads: "Petition for Citation to Show Cause Why Agreement for Sale of Stock Should Not Be Approved."

3. See p. 426, *supra*.

4. It should be pointed out that the Attorney General's last statement at the oral argument was:

So when you ask am I with Dow Chemical or with International Paper, my answer is I am with neither of them. I am with the best offer which will come up at the time of the adjudication of the Orphans' Court. (N.T. 55)

5. A close reading of the cases in this area reveals that when the courts speak of going beyond the pleadings to determine the real adversity of parties to the suit, the proper

amination of the cases indicates that those courts which have engaged in the process of alignment of the parties for purposes of diversity have confined themselves to an analysis of the facts alleged in the plaintiffs' complaint at the time the removal petition is filed. See Pullman Co. v. Jenkins, 305 U.S. 534, 59 S.Ct. 83, 83 L.Ed. 368 (1939); Gratz v. Murchinson, 130 F.Supp. 709 (D.C.Del. 1955); 1A Moore's Fed.Prac. § 0.163[4.-3] at 258. Indeed, the Supreme Court in Smith v. Sperling, 354 U.S. 91, 77 S. Ct. 1112, 1 L.Ed.2d 1205 (1957), stated at 96, 77 S.Ct. at 1115:

> It seems to us that the proper course is not to try out the issues presented by charges of wrongdoing, but to determine the issue of antagonism on the face of the pleadings and by the nature of the controversy.

As we have heretofore pointed out, the Attorney General has a duty to scrutinize the transaction as it affects the beneficiaries of this charitable trust. The Court will not engage in a fact finding expedition to determine the position which the Attorney General will ultimately take in the matter. Therefore, this Court aligns the Attorney General as a defendant.

The effect of aligning the Attorney General as a defendant is three-fold. First, we have Glenmede, a citizen of Pennsylvania, as a plaintiff and the Attorney General, in his individual capacity, a Pennsylvania citizen, as a defendant, and on this basis the case lacks requisite complete diversity. Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 266, 2 L. Ed. 435 (1806).

██ Second, it is noted that the Removal Statute, 28 U.S.C. § 1441(a), says "may be removed by the defendant or the defendants." 28 U.S.C. § 1446(a) sets forth the procedure for removal in the following language, *inter alia:*

> *A defendant or defendants* desiring to remove any civil action . . . from a State court shall file in the district court of the United States for the district and division within which such action is pending a verified petition containing a short and plain statement of the facts which entitle him or them to removal together with a copy of all process, pleadings and orders served upon him or them in such action. (Emphasis added.)

The cases have uniformly interpreted these removal statutes as requiring that all the defendants in the state court action must join or consent to the removal. Tri-Cities Newspapers, Inc. v. Tri-Cities Printing Pressman and Assistants' Union of North America, 427 F.2d 325 (5th Cir. 1970); P. P. Farmers' Elevator Company v. Farmers Elevator Mutual Insurance Co., 395 F.2d 546 (7th Cir. 1968); A. E. Staley Mfg. Co. v. Fischback & Moore, Inc., 353 F.Supp. 578 (E.D.Pa.1973); Resident Advisory Board v. Tate, 329 F.Supp. 427 (E.D. Pa.1971). We have found that the Attorney General is properly aligned as a defendant and, since he did not join in, or consent to, the removal petition, the case must be remanded.

Furthermore, 28 U.S.C. § 1441(b) quoted above specifically provides:

> Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

This language clearly prohibits removal where one or more of the defendants who were properly joined and served in the State action are citizens of the State in which the action was brought. In this case, the Attorney General, in his individual capacity, is a citizen of Pennsylvania—the State in which the action was brought. The law is clear as stated

alignment is ascertained from a simple examination of the plaintiff's pleading in the state court. See City of Indianapolis v. Chase National Bank, 314 U.S. 63, 62 S.Ct. 15, 86 L.Ed. 47 (1941); Dawson v. Columbia Ave. Title and Trust Co., 197 U.S. 178, 25 S.Ct. 420, 49 L.Ed. 713 (1905); Sands v. Geller, 321 F.Supp. 558 (N.Y.1971); Union Construction Co. v. Dillingham Corp., 334 F.Supp. 502 (S.D.Texas 1971); First National Bank of Chicago v. Motolla, 302 F. Supp. 785 (N.D.Ill.1969).

in Morrison v. Jack Richards Aircraft Co., 328 F.Supp. 580, 582 (W.D.Okl. 1971):

 It is undisputed that three of the six Defendants are citizens of Oklahoma, they appear to have been properly joined (no claim is made to the contrary), two of them have been served and one has entered his appearance. In these circumstances, the case is not removable on diversity grounds. 28 U.S.C. § 1441(b); Martin v. Snyder, 148 U.S. 663, 13 S.Ct. 706, 37 L.Ed. 602 (1893); Fine v. Phillip Morris, Inc., 239 F.Supp. 361 (S.D.N.Y.1964); 1 Barron & Holtzoff (Wright Ed.) § 103 and notes 31 and 31.2 thereunder.

 Dow and General Crude contend, however, that even if we find the attorney General should be aligned as a defendant, we should also find that he is a nominal party. In determining the question of removability, the citizenship and non-joinder of a party who is merely nominal or formal is disregarded. Only the citizenship and non-joinder of those who are real parties must be considered. Salem Trust Co. v. Manu. Finance Co., 264 U.S. 182, 44 S.Ct. 266, 68 L.Ed. 628 (1924); Hann v. City of Clinton, 131 F.2d 978 (10th Cir. 1942); Aberle Hosiery Co. v. American Arbitration Assn., 337 F.Supp. 90 (E.D.Pa. 1972); Stonybrook Tenants Assoc., Inc. v. Alpert et al., 194 F.Supp. 552 (D. Conn.1961); Helms v. Ehe, 279 F.Supp. 132 (S.D.Tex.1968); Leadman v. Fidelity & Casualty Company, 92 F.Supp. 782 (S.D.W.Va. 1950).

 Because the determination of whether a party is necessary or indispensable to a proceeding is dispositive of the existence of federal jurisdiction, the question of the status of a particular party must be decided by applying federal law. Kramer v. Caribbean Mills, Inc., 394 U.S. 823, 89 S.Ct. 1487, 23 L.Ed.2d 9 (1969). There is no question, however, that the Court may look for guidance to the nature of the officer's function, which derives from state law,

and the status which would be given that party in the state courts. Commonwealth v. Brown, 260 F.Supp. 323 (E.D. Pa.1966); Hann v. City of Clinton, 131 F.2d 978 (10th Cir. 1942).

The status of the Attorney General in proceedings in Pennsylvania with relation to charitable trusts is clear. In Pruner's Estate, 390 Pa. 529, 136 A.2d 107 (1957), the Pennsylvania Supreme Court explained this interest:

The beneficiary of charitable trusts is the general public to whom the social and economic advantages of the trust accrue. But because the public is the object of the settlors' benefactions, private parties have insufficient financial interests in charitable trusts to oversee their enforcement. Consequently, the Commonwealth itself must perform this function if charitable trusts are to be properly supervised. The responsibility for public supervision traditionally has been delegated to the attorney general to be performed as an exercise of his *parens patriae* powers. . . .

*[I]n every proceeding which affects a charitable trust, whether the action concerns invalidation, administration, termination or enforcement, the attorney general must be made a party of record because the public as the real party in interest in the trust is otherwise not properly represented.*

Id. at 531–533; 136 A.2d at 109–110 (emphasis added) (footnotes and citations omitted). Likewise, in Commonwealth v. Barnes Foundation, 398 Pa. 458, 467, 159 A.2d 500, 505 (1960), the Pennsylvania Supreme Court stated:

This Court has affirmed the common law in holdings that where litigation involves charitable trusts, the Attorney General is obliged to participate as a necessary party.

See also Little's Estate, 403 Pa. 534, 170 A.2d 106 (1961). See also Garrison's Estate, 391 Pa. 234, 137 A.2d 321 (1958); Coleman's Estate, 456 Pa. 163, 317 A.2d 631 (1974).

The Attorney General has a vital interest in the subject matter of this suit because, as heretofore discussed, he has the responsibility of scrutinizing the transaction in order to determine its effect upon the beneficiaries of the charitable trust. Commonwealth of Pennsylvania v. Brown, 260 F.Supp. 323, 360 (1966). The Attorney General also has a judicially recognizable interest in the relief sought in this case as filed in the Orphans' Court.

As the *parens patriae*, it is the duty of the Attorney General to protect the public's interest in this charitable trust. Therefore, we find that the Attorney General is not a mere nominal or formal party and must be considered by this Court in determining the applicability of the Removal Statute.

 In applying the Removal Statute to the Attorney General as a defendant in this case, we have so far been considering the Attorney General's presence in this action as being that of a citizen of Pennsylvania. We have done so because Dow and General Crude have based their contentions for removal on the ground that the Attorney General in this case is a citizen of Pennsylvania. It is well settled that if a party named in a suit actually represents the *state* in that action and the *state* is a real party in interest in the suit, there can be no removal on the basis of diversity jurisdiction. This is because a state is not a citizen of a state as required by the Removal Statute. See 28 U.S.C. §§ 1332 and 1441. Stone v. State of South Carolina, 117 U.S. 430, 6 S.Ct. 799, 29 L.Ed. 962 (1886); O'Neill v. Commonwealth, 459 F.2d 1 (3rd Cir. 1972); Ex Parte State of Nebraska, 209 U.S. 436, 28 S. Ct. 581, 52 L.Ed. 876 (1908); Missouri v. Homesteaders Life Assn., 90 F.2d 543 (8th Cir. 1937); County of Harris v. Ideal Cement, 290 F.Supp. 956 (S.D. Tex.1968).

 Dow and General Crude contend that in order for the State to be considered a party to an action, the relief must result in a pecuniary gain for the State's treasury. They conclude that the Commonwealth of Pennsylvania is not a real party in this action because it has no real interest which will be affected by any decree of the Court. They place primary reliance on the case of Missouri, K & T Ry. v. Missouri R.R. & Warehouse Commr's., 183 U.S. 53, 22 S. Ct. 18, 46 L.Ed. 78 (1901). That case was a suit by the Missouri Board of Rail Commissioners to enforce certain Missouri statutes regulating the rates to be charged by railroads. The Supreme Court held, after examining the function of the Board of Railroad Commissioners, that the State did not have such an interest in the operation of the specially created State Board of Railroad Commissioners that the State agency could be considered the *alter ego* of the state. However, in a later opinion the Supreme Court held that the State was to be considered a party to a proceeding in which the State of Idaho brought an action as a trustee to recover monetary damages for the "use and benefit" of 218 depositors of an insolvent bank. Title Guaranty & Surety Co. v. Allen, 240 U.S. 136, 36 S.Ct. 345, 60 L.Ed. 566 (1916). In that case, it cannot be said that any direct pecuniary interest inured to the State of Idaho as a separate entity. Any damages recovered were to go directly to the depositors who had suffered a loss. Yet the Court determined that, in the particular circumstances of the Idaho proceeding, the State was a real party in interest. In County of Harris v. Ideal Cement Co., 290 F.Supp. 956 (S.D.Tex.1968), a case very similar to the one now before the Court, the district court remanded an action originally commenced in the Texas state courts by Harris County, a body corporate and politic, against a corporate defendant to enforce the provisions of the Texas Clean Air Act. The plaintiff also joined as a defendant the Texas Air Control Board which, under the statute, was a necessary party to the local government's suit. After realigning the Board as a plaintiff, the Court looked to state law for guidance to determine the pos-

ture of the Board. The Court then found, as a matter of federal law, that the Board was the *alter ego* or arm of the state and not an independent agency, and that protecting the environment was a governmental function as distinguished from a private right. On this basis, the Court found that the State was a real party in interest and therefore removal was improvident. Other courts have found the State to be a real party in interest where it was acting as a trustee or representative of the public interest or performing some public function which inures to the benefit of the public. Arkansas State Game and Fish Comm'n. v. W. R. Wrape Stove Co., 76 F.Supp. 323, 331 (E.D.Ark.1948).

The function of the Attorney General of Pennsylvania in proceedings involving charitable trusts is clearly enunciated in Pruner's Estate, 390 Pa. 529, 532, 136 A.2d 107, 109 (1957):

> The beneficiary of charitable trusts is the general public to whom the social and economic advantages of the trusts accrue.[3] But because the public is the object of the settlors' benefactions, private parties have insufficient financial interest in charitable trusts to oversee their enforcement.[4] Consequently, the Commonwealth itself must perform this function if charitable trusts are to be properly supervised. The responsibility for public supervision traditionally has been delegated to the attorney general to be performed as an exercise of his parens patriae powers. See Commonwealth ex rel. Minerd v. Margiotti, 1936, 325 Pa. 17, 23, 188 A. 524. These are the ancient powers of guardianship over persons under disability and of protectorship of the public interest which originally were held by the Crown of England as the "father of the country," 3 Blackstone, Commentaries 47; Fontain v. Ravenel, 1855, 17 How. 369, 58 U.S. 369, 15 L.Ed. 80, and which as part of the common law de-

volved upon the states and federal government. Fontain v. Ravenel, supra. Specifically, these powers permitted the sovereign, wherever necessary, to see to the proper establishment of charities through his officer, the attorney general, and to exercise supervisory jurisdiction over all charitable trusts. 3 Blackstone, Commentaries 427.

The Attorney General is no more than an arm of the state in matters involving charitable trusts. The function of the Attorney General is uniquely a governmental function concerning public and not private rights. Charitable trusts concern the welfare of the entire Commonwealth and the entire Commonwealth has a beneficial interest in every suit involving a charitable trust. Therefore, the Attorney General, whether named as a plaintiff or a defendant, represents the interest of the Commonwealth and the State must be considered as a party.

Defendants Dow and General Crude suggest that even if the State is to be considered as a plaintiff, it has no interest which will be affected by the decree entered in this proceeding and that State is therefore a nominal plaintiff and should not be considered in determining the applicability of the Removal Statute. We need not reiterate all the considerations which make the Attorney General and the Commonwealth of Pennsylvania more than a mere nominal and formal party to this suit.[6] Therefore, whether the Attorney General is aligned as a plaintiff or a defendant, since the Commonwealth of Pennsylvania is the real party in interest, removal is improvident and the Motions to Remand are granted.

Glenmede and IPCo. further contend that this Court lacks subject matter jurisdiction in this case since the Orphans' Court acquired *quasi in rem* jurisdiction over the administration of the trust involved in this proceeding and has juris-

---

8. See p. 430, *supra*.

diction of the trust res. The assumption of *quasi in rem* jurisdiction by the Orphans' Court would preclude removal. People v. National Cancer Hospital of America, 153 F.Supp. 484 (S.D.N.Y. 1956); Conners v. Federal Deposit Insurance Corporation, 39 F.Supp. 812, 815 (E.D.Pa.1941). Dow and General Crude contend that the action filed in the Orphans' Court is not *quasi in rem* in nature, but seeks only a declaration of rights between the parties of their claim to the trust res and hence is purely an *in personam* proceeding.

Neither party contests that the law is as stated by Judge Kalodner in Conners v. Federal Deposit Insurance Corporation, *supra*:

> It is well settled that controversies arising in an in rem proceeding in a State court are not removable where the removal would interfere with the court's exclusive jurisdiction of the res; for example, a proceeding to probate a will is not removable not only because the federal courts have no jurisdiction with respect to the administration of decedents' estates but because they may not by removal interfere with the State in an in rem proceeding.

The parties do differ, however, in their characterization of the Orphans' Court proceeding. Dow and General Crude contend that the suit as filed is one for declaratory judgment and is essentially a contract case, the decision of which does not require the control of the trust res. They rely on Markham v. Allen, 326 U.S. 490, 66 S.Ct. 326, 90 L.Ed. 256 (1946), a suit involving the Alien Property Custodian who was acting under the Trading with the Enemy Act, 50 U.S.C.A. Appendix § 616, for the proposition that the Orphans' Court action is *in personam* because it seeks not to marshal assets of the trust but only a declaration of whether or not a claimant has a right to certain assets. Markham v. Allen was a suit brought by the Alien Property Custodian in the Federal Dis-

trict Court seeking a judgment determining that the Alien Property Custodian was entitled to the entire net estate then being administered in the state court. The Supreme Court held that, while this suit was one to adjudicate rights to property in possession of a state court, it did not disturb the property in custody of the state court and thereby left undisturbed the orderly administration of the estate in the state probate court. On the other hand, Glenmede and IPCo. contend that the issue of whether this Court has subject matter jurisdiction is controlled by Princess Lida of Thurn and Taxis v. Thompson, 305 U.S. 456, 59 S.Ct. 275, 83 L.Ed. 285 (1939), a case wherein the Supreme Court stated at p. 466, 59 S.Ct. at p. 280 that *quasi in rem* actions include:

> [S]uit . . . brought to marshal assets, administer trusts, or liquidate estates, and in suits of a similar nature where, to give effect to its jurisdiction, the court must control the property.

In the *Princess Lida* case, the Supreme Court held that a suit filed in the Common Pleas Court of Fayette County, Pennsylvania for an accounting was quasi in rem and required control of the trust res and that therefore the district court lacked subject matter jurisdiction over a second suit based on diversity alleging mismanagement by the trustees and seeking, in addition, the removal of the trustees and an accounting and repayment by the trustees to the trust fund. The Court found that to effectuate the relief sought in the second suit control of the trust res was required.

A decision on this issue would ultimately rest on this Court's characterization of the suit filed in Orphans' Court and particularly an analysis of the underlying nature of the relief sought in the action.[7] This added argument for remand makes the existence of federal jurisdiction in this case even more questionable. It is well settled that district courts should remand close or doubtful

---

7. See generally the well reasoned opinion of Judge Troutman of our Court in Ryan v. The First Penna. Banking & Trust Company, C.A. No. 73–2404.

cases for two reasons. First, remand will avoid the possibility of a later determination that the district court lacked jurisdiction and, secondly, remand is normally to a state court which clearly has jurisdiction to decide the case. Douglas v. Park City Assoc., 331 F. Supp. 823, 826 (E.D.Pa.1971).

 The relief sought in Glenmede's petition before the Orphans' Court is not only a declaration that the sale to IPCo. is final but includes as its central plea a request for a judicial sale under § 7133(16) of the Probate, Estates and Fiduciaries Code, 20 Pa. S. § 7133(16).[8] See paragraph 40 of Glenmede's Petition. It seems clear to this Court that in order to effectuate a judicial sale the Orphans' Court must assume control of the trust res and such a proceeding is necessarily *quasi in rem.*

Furthermore, the Pennsylvania Supreme Court has declared that the power and responsibility to pass upon the propriety of investments and the transfer of stock held by a trust is a matter of trust administration. Thompson v. Fitzgerald, 329 Pa. 497, 198 A. 58 (1938).

> In exercising jurisdiction over a trust estate a court may frequently be obliged to make orders concerning even the physical custody and safekeeping of specific items of the trust property, or authorizing or directing their sale and the making of reinvestments.

Thompson v. Fitzgerald, *supra,* 329 Pa. at 512, 198 A. at 66.

8. 20 Pa. S. § 7133(16) provides:
 The provisions concerning the powers, duties and liabilities of a trustee shall be the same as those set forth in this code for the administration of a decedent's or a minor's estate with regard to the following:
 (16) Order of court, as in section 3353 (relating to order of court).
 20 Pa. S. § 3353 provides:
 When the personal representative is not authorized to do so by this code or is not authorized or is denied the power to do so by the governing instrument, if any, or when it is advisable that a sale have the effect of a judicial sale, he may sell any

Therefore, if this Court were required to find an additional reason to remand, we would hold that this Court lacks subject matter jurisdiction in that the petition which was first filed in the Orphans' Court was a *quasi in rem* proceeding, in that it sought a judicial sale of the stock of General Crude held by the Pew Memorial Trust and thus involved trust administration and further sought a determination of the trustee's fiduciary duty under Pennsylvania Law to accept a later offer.

This opinion is in lieu of findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

real or personal property of the estate, including property specifically devised, at public or private sale, or may pledge, mortgage, lease, or exchange any such property, or grant an option for the sale, lease or exchange of any such property, under order of the orphans' court division of the county where letters testamentary or of administration were granted, upon such terms and upon such security and after such notice as the court shall direct, whenever the court shall find such sale, pledge, mortgage, lease, exchange, or option to be desirable for the proper administration and distribution of the estate.