## Shollenberger's Appeal.

A guardian, on the settlement of whose account in the Orphans' Court a balance in his favour is decreed, may, by the Orphans' Court Act of 1832, have a writ of *fieri facias* to collect the balance out of the ward's estate.
Richard's Case, 6 *Ser. & R.* 462, commented on.
As to *jurisdiction* of Orphans' Court, see the opinion in this case, page 341.

THIS was an appeal from the decree of the Orphans' Court of *Berks county.*

Jacob Leibersperger and Caroline his wife, late Caroline
Fetherolf, cited John Shollenberger, late guardian of said Caro-
line, to render his account.   April 5, 1850, the account was filed,
and it was referred to an auditor, who made report to the Orphans'
Court of Berks county—finding a balance of $1055.90 due ac-
countant.   Leibersperger and wife filed exceptions to the report;
and May 26, 1851, the Court reduced the balance to $832.57, and
decreed that balance in favor of Shollenberger.

January 20, 1852, on motion, the Court granted a rule to show
cause why Shollenberger should not have an execution in nature
of a *fi. fa.* against said Leibersperger and his wife, for the balance
of $832.57, and interest, to be levied of the goods and chattels,
lands and tenements of said Caroline Leibersperger.   On 20th
August, 1852, the rule was discharged by the Court after hearing
and argument, and from that decree Shollenberger appealed.

Exception was taken to the discharge of the rule to show cause;
in not awarding a writ of execution in the nature of *fieri facias*
for the balance decreed in favor of Shollenberger, and in not
giving him relief by attachment, sequestration, or execution.

*Davis*, for the appellant.

*Smith*, contrà.

The opinion of the Court was delivered, July 25, 1853, by
WOODWARD, J.—Under the Acts of Assembly before 1821, it
was decided in Richards' Case, 6 *Ser. & R.* 464, that the Orphans'
Court had no power to decree a balance against a ward in favor
of his guardian—that the guardian is to account with the ward
and not the ward with the guardian—that the guardian cannot
cite the the ward to a settlement, but, if he has advanced beyond
what he has received, he may, if the expenditure were proper and
fitting to the estate and condition of the ward, create a responsi-
bility that would be enforced elsewhere.   The reasons on which
this ruling was rested were drawn from the inadequacy of the
legislative provisions for notice to the ward, and it was considered
to be going far enough to say the confirmation of the account shall
discharge the guardian without directly involving the ward in per-
sonal liability.   It does not appear from the report of the case
how the guardian was brought to settlement, whether by citation,
or his own desire to be discharged; nor whether he was guardian
of the *estate* or of the *persons* of the minors, but his accounts,
presented to the Orphans' Court, were referred to auditors, who
reported a balance due him from each of the children except one,
amounting in the aggregate to $5000.   The Court having dis-
missed the exceptions and confirmed the report, the wards offered

to appeal to the Supreme Court, but the Orphans' Court refused to allow the appeal unless they gave security for the balances found against them. A rule was then obtained in this Court to show cause why an appeal should not be allowed on giving security for *costs* only, and this was made absolute and the appeal entered. Thus it is apparent that the precise question ruled in Richards' Case was, *whether wards might appeal to the Supreme Court from a decree of the Orphans' Court charging them with a balance due their guardian, without giving security for the balance.* Entertaining great respect for the doctrine taught by the eminent Judge who delivered the opinion, it is impossible to say the case is really authority for anything more than the point ruled, and that does not touch the case before us.

The case of McCormick *v.* Joyce, 7 *Barr* 248, cannot be regarded as adding essentially to the authority of the dicta in Richards' Case, for though quoted and approved, they manifestly had no application to the facts before the Court. There the guardians' account was settled voluntarily under the provisions of the 11th section of the Act of 29th March, 1832, relating to Orphans' Courts—was settled during the minority of the ward, and without the appointment, *expressly required by that section of the Act,* of some suitable person to appear and act for the ward in the matter of the settlement. The point ruled was that *the decree of the Orphans' Court confirming a settlement so made, was not evidence for the guardian in an action at law against the ward for recovery of the balance.*

This conclusion might, we apprehend, have been rested on the higher ground, hereafter to be developed, that since the Act of 1832 an action at law is not maintainable for balances resulting from settlements of guardianship accounts in the Orphans' Court, but beyond doubt, the facts of the case, and the altered law of the Orphans' Court since 1821, rendered the views advanced in Richards' Case unnecessary and inappropriate.

The opinion in Richards' Case was grounded, as we have seen, on the inadequacy of legislative provisions for notice to the ward, an objection which as to its general application has been obviated by various provisions in the Act of 1832, and which can have no special application to the case before us, because here the guardian was the guardian of the estate, the ward was a married woman and of full age before the account was finally adjusted, and the guardian was brought to the settlement by citation sued out by the ward and her husband, who were before the auditors and in Court to watch her interests and to see that justice was done to her. And that there was no failure of justice to the ward may be inferred from their acquiescence in a final decree in favor of the guardian without an attempt at appeal or review. These are

the circumstanceś under which the question is directly presented, whether the Orphans' Court has power to enforce payment out of the ward's estate, of a balance found due to her guardian on a final settlement of his account; and there is nothing in the two cases already noticed which can be regarded as decisive of this question.

At common law the remedy of the ward against his guardian was by action of account render; but since the growth of equity jurisprudence in England, the Court of Chancery has drawn to itself the general superintendence, and protective jurisdiction over the persons and properties of infants, and compels guardians to account, whether they be chancery, statute, or testamentary guardians, on the same grounds that it does agents, trustees, and others in fiduciary relations. As in the common law action of account render it was possible for a guardian, after judgment against him *quod computet,* to have report of a surplusage in his favor, for which if execution could not issue, an action would lie, McCall *v.* Crousillat, 3 *Ser. & R.* 7, so in a bill in equity against him, a decree may pass in his favor; for though in general no person but the *plaintiff* in equity can entitle himself to a decree, yet in *bills for an account* both parties are deemed actors, when the cause is before the Court on its merits; and if a balance is ultimately found in favor of the defendant, he is entitled to a decree for such balance against the plaintiff: 1 *Story's Equity Pl.* 522. Another principle of chancery jurisdiction, coincident with the above and peculiarly applicable to questions of account, is, that the jurisdiction having once rightfully attached, it shall be made effectual for the purposes of complete relief; or as better expressed by Justice BELL in McGuire *v.* Remington, 2 *Jones* 63, When once a Court of equity takes cognisance of a litigation, it will dispose of every subject embraced within the circle of contest, whether the question be of remedy, or of distinct yet connected topics of dispute.

Our Orphans' Court, a creature of the constitution, is essentially a Court of Chancery. Its powers, originally small, have by gradual accretion grown into great magnitude and importance, and, that they may be clearly understood, they should be conformed to some model, and regulated by known and established principles. The chancery jurisdiction is the model, and contains the principles most congenial to this institution, and the legislature have in very many instances sanctioned and enjoined the application of these principles to proceedings in the Orphans' Court.

The judicial mind inclines in the same direction, and for my own part I think it would be well if the practice in this most important branch of our judiciary were, in all possible points, uniformly fashioned after precedents in chancery, bating only their unnecessary circumlocution and verboseness.

[Shollenberger's Appeal.]

The Orphans' Court is sometimes called a Court of limited jurisdiction. This is true, if regard be had to the *derivation* of its powers, for it possesses none inherently, and exercises such only as are conferred by or implied from legislation; and it is true also as to the *subjects* of its jurisdiction, for these are set down in the statutes; but within its appointed orbit its jurisdiction is exclusive, and therefore necessarily as extensive as the demands of justice.

The 4th sect. of the Act of 1832 gives the Orphans' Court jurisdiction in the settlement of guardians' accounts, and the 57th sect. clothes it with ample power to compel obedience to its orders and decrees. The 11th clause of this section is in these words: "Compliance with an order or decree of the Court may be enforced by attachment or sequestration, or in case of a decree for the payment of money against a party who has appeared, the complainant may have a writ of *fieri facias*, which writs may be allowed by the Court, or by any judge in vacation." Before the Act of 1832, legislation and judicial decision had so advanced the Orphans' Courts beyond what were esteemed its powers when Richards' Case was decided, that in Bowman *v.* Herr, 1 *Penn. R.* 282, decided in 1830, it was held to be a Court of equity for settling accounts between guardian and ward, and capable of compelling a guardian to pay over the balance in his hands by *attachment* or *sequestration*. To these remedies the Act of 1832 added the *fieri facias*.

But this remedy is given, say counsel, only to the *complainant*, and they insist a guardian cited to settlement cannot become a complainant within the meaning of the Act, and so is not entitled to the *fieri facias*.

This were a narrow interpretation of a remedial statute, without authority in the expressed views of the codifiers, and in direct conflict with the chancery character of the Orphans' Court. We have seen that in bills in equity *for an account* both parties are actors, and that their decree may pass in favor of either plaintiff or defendant. Accounts in their nature include mutual claims, and balances may result either way. Did the legislature intend this Court of equity should have power to enforce its decree, if it happened to be in favor of one of the parties litigant, but be utterly powerless to enforce it in favor of the other party? Equality is equity, but such a rule would be most unequal and unreasonable. The *fieri facias* is given where the decree is for "the payment of money," and he who applies to the Court or to a judge in vacation to allow the writ, is the "complainant" within the meaning of the statute. And this writ is particularly the remedy of a party who seeks his ascertained dues out of the *estate* of another, for it touches nothing but visible property. We are of opinion, therefore, that this guardian was within the words as well as the meaning of the Act, and that he

2 F 2

was entitled to a *fieri facias* against his wards' estate for the balance decreed to be due him.

If, indeed, such be not his remedy, he has none. It was decided in Carl *v.* Wunder, 5 *Watts* 97, that a guardian cannot maintain. an action against his ward for moneys advanced before he has settled his account in the Orphans' Court, and if thus driven into that jurisdiction, he must find his remedies there. It is a rule founded in statutory enactment, that where a remedy is provided, or duty enjoined, or anything directed to be done by Act of Assembly, nothing shall be done agreeably to the provisions of the common law further than shall be necessary for carrying the Act into effect; and accordingly as soon as the legislature, by the Act of 24th February, 1834, gave to legatees whose legacies are charged on land a bill in equity in the Orphans' Court for their recovery, it was decided that the common law remedy was gone, and that the Orphans' Court is the only forum in which testamentary charges on land may be recovered: Craven *v.* Bleakney, 9 *Watts* 20; Donner *v.* Donner, *Ibid.* 60; Mohler's Appeal, 8 *Barr* 29.

In like manner, if advances made by guardians must be settled in the Orphans' Court, and the duty of enforcing their decrees results out of legislative enactment as well as chancery principles, the conclusion is inevitable that this appellant is seeking redress in the only form in which the law can administer it.

Doubtless the instances are rare where Courts have been called on to administer relief to a guardian against his ward; but the suggestion of counsel that no case can be found in which chancery has decreed a balance to be paid to a guardian is not quite accurate. Hooper *v.* Eyles and Rideout, 2 *Vernon's Ch.* 480, was this: Rideout, the infant, having an estate charged with £150, and the money being called for, Anne Rideout his aunt and guardian, borrowed it of the plaintiff and paid off the encumbrance, and died before she had given the plaintiff security for it. Eyles was her administrator. The plaintiff by his bill sought to have satisfaction out of the infant's estate, his money having gone to pay off the encumbrance on it, but the lord keeper refused so to decree, because money had no ear mark, and without a contract could not be followed into the land. *But the aunt having disbursed more than she had received out of the infant's estate, that account was decreed to be taken, and what was due to the aunt to be raised out of the estate and applied as assets to satisfy plaintiff's debt.* So in Raynesford *v.* Freeman, 1 *Coxe Ch. R.* 417, the lord chancellor expressed his reluctance to go beyond the maintenance the Court had fixed for the infant, but nevertheless decreed the guardian to be allowed for what had been expended by him beyond the former allowance.

[Shollenberger's Appeal.]

Advances by a guardian for the permanent improvement of the ward's estate, were allowed out of the principal of the estate in Jackson *v.* Jackson, 1 *Grattan* 143; see also Freeman *v.* Murray, 7 *Leigh* 412; Long *v.* Norcum, 2 *Ired. Ch. R.* 354, and Whitledge *v.* Callis, 2 *J. J. Marshall* 403.

These authorities are sufficient to show that Courts of equity do not disregard the claims of guardians when just and well founded. It is a salutary jealousy with which the law regards the conduct of guardians; but where they have advanced moneys to educate their wards—to pay off encumbrances, or to repair and improve their estates, and where the advances have not been imprudently made and are not disproportioned to the value of the estates, natural justice demands that they should be reasonably compensated. Happily for us our Orphans' Court, which is the constitutional guardian for infants, has power to inquire into all circumstances— may appoint audits and send issues to the Common Pleas, the better to inform its conscience, and when it falls into error may have it corrected by bill of review or by appeal to the Supreme Court. It is difficult to see how more safeguards could be thrown around infants and their estates. Fraud, imposition, and improvidence are as effectually excluded as in the conduct of human affairs is possible. But when a guardian is adjudged to have performed his whole duty, and to be honestly and fairly the creditor of his ward, even-handed justice, which is no respecter of persons, must afford him the remedies which the law has provided.

> The decree of the Court dismissing John Shollenberger's petition for a writ of *fieri facias* is reversed, and a writ of *fieri facias* against the ward's estate is awarded.