## Baer Trust

*Roberts R. Appel* and *Charles Foltz Herr*, for exceptants.

BOWMAN, P. J., March 5, 1956.—In our adjudication of April 28, 1955, we refused to permit the accountant, the Lancaster County National Bank, to resign as succeeding trustee of the trust created under the last will and testament of Sarah A. Baer for the mainte-

nance of her cemetery lot in the Lancaster Cemetery and the graves thereon located and to award the balances shown in the account to the cemetery company as succeeding trustee. Exceptions thereto were filed by the trustee and the Lancaster Cemetery.

The facts are set forth in the adjudication. The account of the trustee is one of 42 accounts of trusts for the maintenance of cemetery lots filed by this trustee and other corporate trustees. Of this number 28 accounts were filed by the present trustee, 12 by the Fulton National Bank of Lancaster, and two by the Conestoga National Bank of Lancaster. All such accounts were filed to afford the respective trustees an opportunity to present their petitions to resign and to permit the appointment of the Lancaster Cemetery as succeeding trustee and subsequently, if that appointment is made, to enable the succeeding trustee to combine and merge the funds and transfer the same to a corporate trustee for investment purposes, all under the provisions of the Act of August 10, 1951, P. L. 1199, 15 PS §§1101, 1102, and of the Act of June 12, 1951, P. L. 520, 15 PS §2851-315.

We found that the Lancaster Cemetery is a nonprofit corporation within the provisions of the Nonprofit Corporation Law of May 5, 1933, P. L. 289, as amended. We accepted as a fact that an increased return in income would result by reason of the combination and merger of the principal of the various trusts in an omnibus fund. However, we refused the resignation of this trustee as well as of that of the other trustees because we felt there would be lacking the independent duty of inspection and supervision of the burial lots and of seeing that the income is applied for the purposes for which it is expended.

The duties which the cemetery company would have to assume as trustee are the same as those now charged upon this corporate fiduciary. It was stated at argu-

ment (and also set forth in the brief of counsel) that in actual practice corporate trustees of cemetery trusts do not "supervise and inspect" as we suggested they should, and that aside from dictum and the general rule that a trustee is under a duty to administer the trust in accordance with its terms, the conclusion that a corporate fiduciary of a cemetery trust has a duty to supervise and inspect is without authority. Regardless of phraseology or terminology, it *is* the duty of a corporate trustee when it makes an expenditure for the maintenance of a cemetery lot to see that the services for maintenance were actually rendered. And how, without inspection, can a trustee determine what is required to be done in order that it may faithfully and properly carry out the purpose of the trust?

The problem created by various small cemetery trusts with their ever-dwindling income has become acute in recent years. It is not peculiar to this locality: Sixty Cemetery Trusts, 5 Fiduc. Rep. 505.

When this testatrix died in 1898 and by her will set up the trust of $100 (reduced by reason of collateral inheritance tax to $95) to provide for the maintenance of the cemetery lots and graves, the earning capacity of money produced sufficient income for the directed maintenance. Until 1932 the fund produced an annual gross income of $5.50, adequate to pay for the annual upkeep of the lot and graves. By comparison, the principal, now reduced to $80.52, produced gross income of $4.10 (derived from United States Bonds) during the period June 7, 1950, to September 15, 1953, and for the years 1950 to 1953 the Lancaster Cemetery was paid a total of $5.21 for the upkeep of the lot and graves. Other small trusts present a similar condition.

We have carefully reconsidered the problem here involved and the exceptions. We see in the two acts of 1951 herein referred to an attempt on the part of the General Assembly to alleviate a long-existing condition.

While not mandatory, the acts should be given effect if the court is satisfied that the trust is not affected adversely.

In Wilson v. Board of Directors of City Trusts, 324 Pa. 545, 550, 551, it is stated:

"It is clear therefore that the orphans' courts of Pennsylvania have exclusive jurisdiction over the control, administration and management of all trust estates created by will and are responsible for the proper management, administration and preservation by the trustees of the trust res.

"The scope of the powers that may be exercised by that court in relation to the administration, management and control of the trust property is ample for all purposes. It has been held that testamentary trustees are officers of the court (Laverelle's Estate, 101 Pa. Superior Ct. 448) and it is only right and proper that they should be subject to the control of the court to which they must account, which may surcharge them for dereliction in office and determine whether such dereliction has taken place. In the exercise of this power particularly where 'charitable uses or bequests are involved, it (the orphans' court) has (the) broad visitorial and supervisory powers of the Commonwealth': Toner's Estate, 260 Pa. 49. . . . In Laverelle's Estate, supra, the court said, 'The power to "control" has a comprehensive significance, including the right to direct, remand, dominate', and at p. 451: 'There can be no question that the orphans' court possesses plenary powers within its sphere.' . . . And, in Shollenberger's Appeal, 21 Pa. 337, the court said: '. . . within its appointed orbit its jurisdiction is exclusive, and therefore necessarily as extensive as the demands of justice.'

"The scope of supervisory control of necessity includes any matter which concerns the integrity of the trust res—its administration, its preservation and its

disposition and any other matter wherein its officers (trustees) are affected in the discharge of their duties. . . ."

We think under the broad visitorial and supervisory power thus vested in the orphans' court this trust, as well as the other cemetery trusts similarly involved, would not be affected adversely if the Lancaster Cemetery were appointed succeeding trustee and the fund invested as proposed. The exceptions are therefore sustained.