**In re MILTON HERSHEY SCHOOL TRUST.**

**Appeal of Milton Hershey School and the Hershey Trust Company, in its Capacity as the Trustee of the Milton Hershey School Trust.**

Commonwealth Court of Pennsylvania.

Argued Sept. 11, 2002.
Decided Sept. 18, 2002.

**3.** In its opinion, the majority cites to the so-called "stay put" provision at Section 1415(j) of the IDEA, 20 U.S.C. § 1415(j).

Jack M. Stover, Harrisburg, for appellants.

Gerald J. Pappert, Harrisburg, for appellee.

Before COLINS, President Judge, McGINLEY, Judge, PELLEGRINI, Judge, LEADBETTER, Judge, and SIMPSON, Judge.

OPINION BY President Judge COLINS.

Before this Court is the appeal of the Hershey Trust Company and Milton Hershey School (collectively, Trust) seeking a stay of the special injunction issued by Senior Judge Warren G. Morgan of the Dauphin County Orphan's Court and the Trust's emergency application for expedited ruling on the merits of Judge Morgan's grant of the special injunction. The preliminary or special injunction prohibits the Trust from entering into any agreement or understanding that would or could commit the Trust to a sale or other disposition of any or all shares of Hershey Foods Corporation held as the corpus of the Milton Hershey School Trust pending the Orphan's Court's disposition of the Pennsylvania Attorney General's petition for citation for rule to show cause why a proposed sale of the Trust's controlling interest in Hershey Foods should not be conditioned upon court approval.

The history of this matter is set forth in detail in Judge Morgan's opinion, which we attach. Briefly, since 1918, the Trust's corpus has consisted primarily of a controlling interest in Hershey Foods, previously known as the Hershey Chocolate Company. The Trust has recently proposed sell-

ing its controlling interest in Hershey Foods in an effort to diversify its assets. The Attorney General filed a petition for citation and request for special injunction pursuant to his office's *parens patriae* powers.[1] After a hearing, the Orphan's Court granted the preliminary or special injunction, and the Trust appealed to this Court, seeking a suspension of the injunction pending appeal. The Orphan's Court denied a request for suspension filed simultaneously in that court. In our scheduling order, we raised the issue of our appellate jurisdiction over this matter. Subsequently, the Trust filed an emergency application for an expedited ruling on the merits of the Orphan's Court's preliminary injunction.

## Jurisdiction

■ The Commonwealth Court's jurisdiction over appeals from the courts of common pleas is set forth in 42 Pa.C.S. § 762. Any appeal that is not, by statute, taken to the Commonwealth Court or to the Supreme Court under 42 Pa.C.S. § 722, falls under the residual jurisdiction of the Superior Court pursuant to 42 Pa. C.S. § 742. The Commonwealth Court has exclusive jurisdiction over final orders of the courts of common pleas in all civil actions or proceedings "[b]y the Commonwealth government, including any officer thereof acting in his official capacity." 42 Pa. C.S § 762(a)(1)(ii). "Proceeding," "[i]ncludes every declaration, petition or other application which may be made to a

court under law or usage or under special statutory authority, but the term does not include an action or an appeal." 42 Pa. C.S. § 102. The present matter having been initiated by the Attorney General's Office by the filing of its petition for citation in the Orphan's Court,[2] we conclude that this Court has jurisdiction pursuant to 42 Pa.C.S. § 762(a)(1)(ii).

■ As a separate basis for jurisdiction, in cases where no objection is made to the lack of jurisdiction before the record of proceedings is filed, the failure of an appellee to file an objection to the jurisdiction operates to vest jurisdiction in the appellate court. Pa. R.A.P. 741. Here, the record was filed in this Court on September 10, 2002, and no party has objected to our exercise of jurisdiction.

## Appeal from Grant of Preliminary Injunction

Because we agree with the Trust that the Court has all of the necessary information and argument necessary to determine the merits of this appeal, we grant the Trust's application for expedited ruling on the merits of the appeal of the preliminary injunction.

■ The prerequisites for a preliminary injunction are 1) that the injunction is necessary to prevent immediate and irreparable harm that could not be compensated by damages; 2) that greater injury would result by refusing the injunction than by granting it; 3) that the injunction

1. *"Parens patriae* powers" refers to the "ancient powers of guardianship over persons under disability and of protectorship of the public interest which were originally held by the Crown of England as 'father of the country,' and which as part of the common law devolved upon the states and federal government." *In re Pruner's Estate*, 390 Pa. 529, 532, 136 A.2d 107, 109 (1957) (citations omitted). These powers permitted the sovereign, through his officer, the attorney general, to

exercise supervisory jurisdiction over all charitable trusts. *Id.*

2. We note that the Attorney General's petition for citation was filed under the Orphan's Court 1963 docket number given to the action originally filed by the Trust seeking permission from the Orphans' Court for *cy pres* in order to build a hospital, now known as the Penn State Milton S. Hershey Medical Center.

restores the parties to the status quo that existed immediately before the alleged wrong; 4) that the wrong is manifest and the injunction is reasonably suited to abate it; and 5) the applicant's right to relief is clear. *City of Philadelphia v. District Council 33,* 528 Pa. 355, 598 A.2d 256 (1991). To establish a clear right to relief, the applicant must show that it is likely to succeed on the merits. *Id.* Our review of a trial court's grant of a preliminary injunction is to determine whether there were *any reasonable grounds* for the trial court's action, and we will reverse only if no such grounds exist. *Id.*

■ The Trust argues that the Attorney General has no authority to prevent an otherwise lawful disposition of trust assets under the guise of protecting the public. This underlying legal issue, while important, is not the focus of our review. Rather we must review the record to determine whether the trial court had the "apparently reasonable grounds" required to support its decision. A review of the record and Judge Morgan's opinion does not immediately convince us no apparently reasonable grounds exist to support the order as one that restores the status quo, prevents the immediate and irreparable harm that would result if the Trust proceeded with a sale of its controlling interest in Hershey Foods before the issues raised by the parties are resolved, and prevents a greater injury than what might result if the injunction were denied.

In ruling on the Attorney General's likelihood of success on the merits, Judge Morgan states that given the existence of the other elements necessary in order to obtain a preliminary injunction, it is sufficient that "substantial legal questions are raised that must be resolved to determine the ultimate rights of the parties." (Orphan's Court opinion, p. 14.) The sale of Hershey Foods, if consummated, would be irreversible and would terminate the entire legal proceedings prior to a resolution of the case on the merits.

Because we cannot conclude that no reasonable grounds exist to support Judge Morgan's order, we must affirm his grant of the preliminary injunction. The Trust's application for stay of the injunction pending appeal is therefore dismissed as moot. In the interest of concluding this matter and to mitigate any harm to the Trust or the public interest that might result from the imposition of the preliminary injunction, we will direct that the Orphan's Court rule on the merits of the controversy expeditiously.

Judge LEAVITT did not participate in this decision.

### ORDER

AND NOW, this 18th day of September 2002, the order of the Court of Common Pleas of Dauphin County, Orphan's Court Division in the above-captioned matter is affirmed. The appellants' application for stay of the trial court's order is dismissed as moot.

The Orphan's Court is directed to rule on the merits of this controversy within 30 days of the entry of this order.

ATTACHMENT

IN THE ORPHANS' COURT DIVISION

COURT OF COMMON PLEAS
OF DAUPHIN COUNTY,
PENNSYLVANIA

IN RE: MILTON HERSHEY
SCHOOL TRUST

NO. 712, YEAR OF 1963

Sept. 10, 2002

### ADJUDICATION

The Hershey Trust Company and the Board of Managers of the Milton Hershey

School (the Board of the Trust Company is also the Board of Managers) propose to sell the controlling interest in the Hershey Foods Corporation now held in trust for the School. On August 19, 2002, on the Petition of the Attorney General of the Commonwealth we issued a Citation directing the Trust Company and the Managers to show cause why information regarding the sale process should not be disclosed to this Court and the Attorney General and why a hearing should not be held on any proposed sale. On August 23, 2002, the Attorney General filed a Petition for an ex parte injunction against the same respondents upon which we deferred consideration until a hearing on September 3, 2002, at which all parties appeared and were heard. On September 4, 2002, we issued an Order (with Adjudication to follow) enjoining the respondents from committing to any sale until disposition of the pending Citation.

The issue herein discussed is whether the proof available to this Court supports the injunctive relief granted. We should here note that prior to the hearing on the injunction we advised counsel for both the petitioner and the respondents that we do not view our role in this matter, commencing with this proceeding, as "a passive instrument of the parties"[1]; that the public interest in the controversy and this Court's inherent plenary powers of supervision over trusts may lead us to add to our consideration of the issues such facts not offered by the parties as might aid our determination; and we particularly referenced, but did not thus limit, judicial notice of adjudicative facts disclosed in the records of this Court in prior proceedings involving the Milton Hershey School Trust

wherein the respondents here were the moving parties.

## FINDINGS OF FACT

In 1909 Milton S. Hershey and Catherine, his wife, by deed of trust endowed for the benefit of orphan children an institution now known as the Milton Hershey School. In 1918, after Catherine's death, Mr. Hershey added to the trust (hereafter referred to as the School Trust) most of his fortune including the controlling shares of stock of the Hershey Chocolate Company (now Hershey Foods Corporation). The Hershey Trust Company, then owned by Mr. Hershey, was and still is the trustee of the School Trust and, as directed in the trust deed, the members of the Board of Directors of the Hershey Trust Company also serve as the Board of Managers of the School.

By his Will, Mr. Hershey gave the stock of the Hershey Trust Company to the School Trust. Accordingly, there now exists a unique arrangement for the election and composition of the Directors/Managers. During Mr. Hershey's entire lifetime and thereafter until the 1980's the Directors/Managers all resided in Derry Township (where the community of Hershey is located) or nearby. The present membership of the Directors/Managers includes only four who live near Hershey. Three live in the Philadelphia area at least 100 miles from Hershey and of the remaining members, two live in New York, two in Virginia, one in Los Angeles, one in North Carolina, one in Massachusetts, one in Washington, D.C., one in Ohio, and one in Minnesota.

The Deed of Trust directs that the Milton Hershey School shall be located in Derry Township, Pennsylvania, and gives

---

1. Wyzanski, *A Trial Judge's Freedom and Responsibility,* 65 Harvard L.Rev. 1292 (quoting Edmund Burke).

preference to children born in the Pennsylvania counties of Dauphin (where Derry Township is located) and Lebanon and Lancaster which adjoin Dauphin County. In 1935, Mr. Hershey established the M.S. Hershey Foundation providing for vocational, cultural, or professional training of any resident of Derry Township and subsequently established the Derry Township School Trust which subsidizes the Derry Township School District. These Trusts are also administered by the Hershey Trust Company. Moreover, in the area in close proximity to his chocolate factory he created a community, now known as Hershey, including banks, a department store, community center, hotel, sports facilities, theatre, hospital, utility companies, transportation, and homes for himself and for many of his employees. Milton Hershey's charitable interests were narrowly restricted. He was concerned for children and for his community.

Shares of Hershey Foods Corporation amounting to a controlling interest in the Corporation have comprised the corpus of the School Trust from 1918 until the present date. At the request of the present Directors/Managers, the Hershey Foods Corporation is soliciting bids for the acquisition of the Corporation which would include purchase of the shares of stock held in the School Trust representing 77% of the voting power of all outstanding shares of the Hershey Foods Corporation.

In 1999, Robert C. Vowler, President of the Hershey Trust Company and Dr. William L. Lepley, President of the Milton Hershey School, filed a *cy pres* petition in this Court to use accumulated income to establish and fund an institute to study problems relating to needy children. Both verified on behalf of the Directors/Managers as follows:

> Petitioners believe and therefore aver that the School Trust's accumulated income fund has again grown to the point where it is more than sufficient to carry out the Settlors' specific charitable purpose (i.e., the maintenance and perpetual operation of the School), and will continue to grow further beyond the amount necessary until either the Deed of Trust is modified, or the amount is reduced through a *cy pres* award, or both.

Petition for *Cy Pres* Award, 712 Year of 1963, filed Jan. 20, 1999, paragraph 47.

At a hearing in the same matter on July 1, 1999, in response to a question whether in many years the income received by the School Trust has been greater than the expenses of operating the School, Vowler answered, "... that would be true for virtually almost all the years of the history of this Trust," (N.T. 51). And when queried about his confidence in his ability to predict future income flows, responded, "We know the portfolio structure. We know long term expectations of what these are and we have a high degree of confidence in that," (N.T. 62).

The only purpose asserted by the Hershey Trust Company and the Board of Managers for the current proposal to sell Hershey Foods Corporation is to diversify its portfolio of assets in the School Trust.

Where a merger or acquisition process is being conducted with competition among those interested enough to make an offer, the bid price usually includes a premium. This leads the acquiring company to introduce management efficiencies in order to cut costs to achieve an acceptable return and, if a public company, to respond to the concerns of investment analysts. The likelihood is great that these efficiencies will result in reduced work forces with a potential for plant location changes. Unless an event during the bid process for merger or acquisition actually precludes a bid, mere delay in the process will not discourage interested parties from submitting their

bids. In the sale process now being conducted by Hershey Foods Corporation, the final bids will be received within two or three weeks and a contract for sale will likely be entered into within one or two days after the bids are received. There also exists the possibility that a pre-emptive bid will be submitted that will accelerate the bid process.

## DISCUSSION

At the outset we would state that the Attorney General's Petition for a Citation raises issues of the effect on public interests of a sale by the School Trust of its controlling shares in Hershey Foods Corporation and is broad enough to also raise issues of abuse of discretion by the Directors/Managers in initiating the process.

That the Attorney General has standing in this proceeding is the law of this Commonwealth. The responsibility for public supervision of charitable trusts traditionally has been delegated to the Attorney General to be performed as an exercise of his *parens patriae* powers. See *In re Estate of Coleman,* 456 Pa. 163, 317 A.2d 631 (1974). Our Supreme Court in *In re Pruner's Estate,* 390 Pa. 529, 136 A.2d 107, 110 (1957), explained this interest: "[I]n every proceeding which affects a charitable trust, whether the action concerns invalidation, administration, termination or enforcement, the attorney general must be made a party of record because the public as the real party in interest in the trust is otherwise not properly represented." Property given to a charity is in a measure public property, *McKee Estate,* 378 Pa. 607, 108 A.2d 214 (1954), and the beneficiary of charitable trusts is the general public to whom the social and economic benefits of the trusts accrue. *In re Pruner's Estate, supra.* We conclude therefore that the Attorney General has the authority to inquire whether an exercise of a trustee's power, even if authorized under the trust instrument, is inimical to the public interest.

That this Court has broad visitorial and supervisory powers over charitable trusts is also well established. *Coleman, supra; In re Toner's Estate,* 260 Pa. 49, 103 A. 541 (1918). The Court "within its appointed orbit is exclusive, and therefore necessarily as extensive as the demands of justice." *Shollenberger's Appeal,* 21 Pa. 337 (1853).

The rules relating to preliminary injunctions are stated in a number of ways but an acceptable version of the governing general principles is set forth in 15 Standard Pennsylvania Practice § 83.18:

1. the relief is necessary to prevent irreparable harm;
2. the relief will restore the status quo;
3. there is greater injury in denying than granting; and
4. the right to relief is clear.

In their Answer to the petition for injunctive relief, the Directors/Managers suggest that they cannot be charged as causing any harm relative to the sale process because (1) the Hershey Foods Corporation is conducting the process, not they and (2) there is yet no proposed sale. The sale process according to them is just an "exploration" of "options" regarding a diversification policy. This explanation is more than disingenuous; it is an affront to the intelligence. They admit in their Answer that they requested the sale process. Are we to believe that having induced prospective purchasers to develop financing, tour plants, and obtain confidential information from Hershey Foods Corporation that is it just as likely that they won't sell as it is that they will? If, as they argued at hearing, horrific fluctuations in stock price causing potential for losses to the School Fund will follow from any delay

in the sale process, what, pray tell, will the market reaction be and that of prospective bidders if this process is just a "look see"? The testimony of their own witness, an officer of UBS Warburg AG, the investment bankers representing the Directors/Managers, confirms that the process is far beyond that.

The Attorney General has sufficiently carried his burden of proving the potential harm that he seeks to prevent, namely, the adverse economic and social impact against the public interest if a sale of Hershey Foods Corporation takes place, particularly in its effect on employees of the Corporation and the community of Derry Township. The persuasive thrust of the testimony of Richard A. Zimmerman, a former CEO and Chairman of the Board of Hershey Foods Corporation with years of experience in mergers and acquisitions, was that a sale of the controlling interest in Hershey Foods Corporation creates a likelihood that there will be reduction in the work force and that relocations of plant operations and closing of duplicate facilities will be matters of probable immediate consideration by the acquiring company. We would add that this Court is not required to be blind and deaf to that which has been commonplace information to the public during the recent past period of numerous mergers and acquisitions of public companies.

That the Attorney General cannot identify with certainty that the apprehended harms will occur does not put him out of court. That requirement has never been the rule.[2] We are not unmindful that injunctive relief is not casually invoked. However, we are also aware that this proceeding is equitable in nature and that considerations of potential harm are perforce viewed in the light cast by the breadth or limits of the relief sought and the finality of the consequences of denying the relief. The relief requested here does not end the sale process. It is limited to a restraint of the Directors/Managers from committing to a sale pending resolution of the issues raised by the Citation. This comports with the customary approach of courts to injunctions that the relief be no broader than necessary pending adjudication of the underlying controversy. On the other hand, the finality of a consummated sale of Hershey Foods Corporation is palpable; the obstacle to reconstructing the proverbial broken egg pales by comparison.

There are also other issues that await consideration of the Citation.

Granted, the deed of trust gives the trustee discretionary powers of investment and a court will not ordinarily interfere with what appears to be an act within that discretion. The rule is, however, a general rule, not an absolute.

Mr. Hershey maintained the controlling interest in his chocolate business as essentially the sole asset of the corpus of the School Trust from 1918 when he made the gift until he died in 1945. His deed of trust provides that the corpus cannot be used for the operating expenses of the School. The trust was administered by a small trust company owned by Mr. Hershey, and located where its directors, comprised until recent years of local citizens and officers of his company, could conve-

---

2. The reliance of the Directors/Managers on *Novak v. Commonwealth,* 514 Pa. 190, 523 A.2d 318 (1987), is misplaced. The injunction there was denied because it related to employment contracts for the infringement of which there were adequate remedies at law. The issue of the quantum of proof of harm to individual employees was not controlling. The case is readily distinguishable in that it did not involve a claim of harm to public interest and the relief sought would have interfered with the functioning of government.

niently both manage the School and monitor the condition of the business that sustained the School. The trust company is located in a small town built by Mr. Hershey around his manufacturing facilities and the entire fortune earned from that business by Mr. Hershey he dedicated to the School he located in that town and to its residents. The symbiotic relationship among the School, the community, and the Company is common knowledge. The business was not, during Mr. Hershey's life, is not now, nor foreseeably in financial difficulty, and the School, according to statements by officers of the Directors/Managers has ample funds in its accumulated income to carry out its purposes. The proposal by the Directors/Managers is for the sale of all of the shares of Hershey Foods Corporation. There is no suggestion of a sale of such number of shares as would still reserve control of the Corporation nor explanation why, if any need for funds exists for which a sale is necessary, it could not be met while still keeping control.[3] The question certainly occurs as to whether an immediate premium share price obtained in losing control is a reasonable trade-off for permanently retaining it.

The foregoing circumstances, we conclude, sufficiently raise, for fuller investigation in connection with the Citation, the issue of whether the sale proposal comports with Mr. Hershey's intent as indicated in his scheme for trust management, as well as an issue whether under all relevant circumstances, the act of these respondents, the Directors/Managers, is so unreasonable as it relates to their duty to the School Trust that it amounts to a capriciousness that is an abuse of their discretion.

The only explanation given by the Director/Managers for the proposed sale is that they have a duty to diversify their investment portfolio. Their consultant who recommends this divesting of the asset that has sustained the School for most of its years was unaware that the law of Pennsylvania for long years, until 1999, was that a trustee had no obligation to diversify the trust corpus. A recital of the Pennsylvania rule is given in *Estate of Pew*, 440 Pa.Super. 195, 655 A.2d 521, 543 (1994): "the trustees...had no obligation under Pennsylvania law to diversify the trust principal by selling the shares of the Sun Company common stock and making another investment when the trust principal, as funded by the settlor, was fulfilling [the beneficiaries' interests]." Nor did he know that in 1999 when the Legislature enacted a modified version of the Uniform Prudent Investor Act, 20 Pa.C.S. § 7201 et seq. (1999), the section (§ 7204) requiring trustees to reasonably diversify investments was not made applicable to existing trusts. The official comment to § 7204 reads in relevant part: "...[T]his section is not made applicable to existing trusts because Pennsylvania had not required diversification...Retroactivity would have required drafters of old trusts to have been clairvoyant to have negated a nonexistent duty to diversify."

It is also significant that this same consultant, having stated that his investment objective is to make enough money to support the School's current and prospective educational program in perpetuity at a reasonable level of risk, admitted on cross-examination that he had never known the

---

3. Some nisi prius judges are more able than others, but few are lacking that instinct, honed in many trials of many different causes, that from time to time tells them, "This needs looking into!" A full inquiry into the ultimate issues raised by the Attorney General's Petition for Citation may resolve that concern.

Milton Hershey School not to have enough money to do what it needs to do. Indeed, in a proceeding in this Court little more than 2½ years ago, both Robert C. Vowler, the President of the Trust Company and William L. Lepley, the President of the School verified that there was then *in the accumulated income fund* not only enough money to *maintain* and *perpetually* operate the School but also to establish and operate an Institute [4] utilizing one-third of the income dollars allocated to their combined operations. Relevant to the claim of a need for diversification now being advanced, Vowler testifying in the prior proceeding was asked what degree of confidence he had in being able to predict future income flows. His answer: "We know the portfolio structure. We know long term expectations of what these are and we have a very high degree of confidence in that." (N.T. at 62).

Turning to the questions as to whether there is sufficient proof that the relief will restore the status quo, and the weighing of the harm in denying rather than granting the injunction, no extended discussion is necessary.

The status quo is usually defined as the last peaceable and lawful uncontested status preceding the underlying controversy. Plainly, that status would not be, as the Directors/Managers contend, a continuation of the sale process. This controversy erupted upon the announcement by Hershey Trust Company that it intended to seek offers for the sale of Hershey Foods Corporation. The last peaceable status would have us not only stop but to reverse the sale process. Our Order in this matter will do neither. As stated before, the requested relief does not stop the process; it

delays possible consummation of the process until the issues raised by the Citation are dealt with.

If we deny the injunction, the experts in mergers and acquisitions called by both parties agreed that the sale of the Hershey Foods Corporation will be consummated within a short time; a few weeks, possibly only days. The opportunity to act against the potential harm that concerns the Attorney General will have passed as well as the immediate occasion for inquiry into issues having to do with the performance by the Trustees of their fiduciary duties.

Weighing the probative value of the testimony by an employee of the investment banking firm advising the Directors/Managers against that of an independent witness with as much or more expertise, we are persuaded by the latter that a delay in the sale process will not discourage prospective bidders at this stage from going forward in the sale process. Further, we do not find compelling the argument that any order delaying the process will cause significant fluctuations in Hershey Foods Corporation stock that will result in possible loss to the School fund. Guessing about the price of the stock of Hershey Foods Corporation in the ensuing weeks will be for the gambler, not for this Court.

The Directors/Managers argue at length that the Attorney General has failed to establish that he has the required right to relief. The arguments are without merit.

They first claim as a rule absolute that under the Probate, Estate, and Fiduciaries Code this Court cannot restrain any sale of trust assets if a trustee has a power to sell. They assert this purported rule on the basis of 20 Pa.C.S. § 3355, arguing that

4. This was a *cy pres* proceeding based on an allegation that there was a pro tanto failure of the School Trust because it had more accumulated income ($750,000,000) than it was

ever going to need. We denied the petition on the ground that the proposed Institute was not within the Settlors' intent.

the section provides that the court may restrain a sale "made under an authority not given by the governing instrument" thus it follows that a court is *prohibited* from interfering with a sale made in any exercise of an authority to sell, citing *Estate of Hughes,* 517 Pa. 410, 538 A.2d 470 (1988). In addition to the observation that the rule as advanced would obviate a variety of long-established reasons for finding an abuse of discretion in the exercise of a power to sell and is wholly unfounded, we would also note that *Hughes* stands for no such proposition. The ratio decidendi of the case was Section 3360(a) of the Code relating to a power of a court to set aside for inadequacy of consideration or higher offer a contract of sale of real estate already entered into. The case expressly rejected any application of Section 3355 to the issue it was deciding.

Next, the Directors/Managers argue that the law of Pennsylvania establishes that the duty of a trustee is to administer the trust solely for the benefit of the beneficiaries of the trust, quoting in support the statement under Comment p. of § 1701(1) of the Restatement, Trusts which reads, "The trustee is under a duty to the beneficiary in administering the trust not to be guided by the interest of any third person." We are familiar with these rules but do not construe them to mean that as long as the act of a trustee is an exercise of a power given in the trust instrument and purports to serve the trust, the trustee can act with impunity and without regard for adverse effects on others. We know of no case that employs the rules advanced by the Directors/Managers in the context of an Attorney General asserting his duty to see that the public interest is not harmed by an act of a trustee that may otherwise be lawful and purports to be in furtherance of the trust. Few such issues are likely to arise and rarely one with the aspects of the case

before us. How many trusts enjoy holding a controlling interest in one of this nation's largest, historically profitable, and best-known corporations? The duties of a trustee and the Attorney General are concomitant in so far as assuring that the benefits of a charitable trust are delivered in accordance with the Settlor's intent; but because the socio-economic benefits of a charitable trust extend beyond the designated beneficiaries to the public itself, although ordinarily compatible with each other, the Attorney General has an added responsibility of assuring that compatibility.

In sum, we are satisfied that the Attorney General, under the facts of this case, notably the circumstance that the threatened action by the Directors/Managers of the School Trust appears to be excessive and unnecessary for any foreseeable needs of the Trust, has the duty and the power to investigate its consequences and to take such actions as the consequences may warrant.

Lastly, the Directors/Managers would hold the Attorney General to a standard of proof for the required clear right to relief that is tantamount to a resolution of the ultimate issues in this matter. That is not required; a moving party need not prove an absolute right to relief in order to obtain a preliminary injunction. It is sufficient, if the other elements necessary for a preliminary injunction exist, and substantial legal questions are raised that must be resolved to determine the ultimate rights of the parties. See *Pleasant Hills Constr. Co. v. Public Auditorium Auth.,* 782 A.2d 68 (Pa.Cmwlth.2001) (rev. on other grounds, 567 Pa. 38, 784 A.2d 1277 (2001)); *Chmura v. Deegan,* 398 Pa.Super. 532, 581 A.2d 592 (1990). Substantial legal questions have been raised as discussed herein both by the Attorney General and this Court.

Accordingly, our conclusion of law is that the Attorney General is entitled to the relief requested. For the foregoing reasons, we entered the following

### ORDER

AND NOW, this 4th day of September, 2002, the petition for special injunctive relief filed by D. Michael Fisher, Attorney General of the Commonwealth of Pennsylvania, is GRANTED.

We hereby Order and Direct that pending disposition of the Citation issued by the Court on August 19, 2002, and/or further order of this Court, the Board of Managers of the Milton Hershey School and the Hershey Trust Company as Trustee of the Milton S. and Catherine S. Hershey Trust, respondents, shall not enter into any agreement or other understanding that would or could commit the respondents to a sale or other disposition of any or all of the shares of Hershey Foods Corporation held as corpus of the Trust.

/s/ Warren G. Morgan, Senior Judge

### ORDER

AND NOW, this 4th day of September, 2002, the petition for special injunctive relief filed by D. Michael Fisher, Attorney General of the Commonwealth of Pennsylvania, is GRANTED.

We hereby Order and Direct that pending disposition of the citation issued by the Court on August 19, 2002, and/or further order of this Court, the Board of Managers of the Milton Hershey School and the Hershey Trust Company as Trustee of the Milton S. and Catherine S. Hershey Trust, respondents, shall not enter into any agreement or other understanding that would or could commit the respondents to a sale or other disposition of any or all of the shares of Hershey Foods Corporation held as corpus of the Trust.

Distribution:

D. Michael Fisher, Esquire, Mark A. Pacella, Esquire, Office of Attorney General, Strawberry Square, Harrisburg, PA 17101.

Jack M. Stover, Esquire, Jayson R. Wolfgang, Esquire, Paul Kevin Brobson, Esquire, Buchanan Ingersoll, Harrisburg, PA.

DISSENTING OPINION BY Judge PELLEGRINI.

I respectfully dissent from the majority's opinion because I disagree that the Attorney General has authority to become fully involved under a *parens patriae* theory to protect the "public" regarding the proposed sale by the Milton Hershey School Deed of Trust (Deed of Trust) of trust assets that constitute a controlling interest in the Hershey Foods Corporation prior to the Trustees making any decision under the trust laws of Pennsylvania to actually sell trust assets. If that were the case, then the Attorney General could become fully involved in the decision-making process of every charitable trust or, for that matter, in every charity in Pennsylvania.

This case involves the Milton Hershey School (School) Deed of Trust which was created in 1909 by Milton and Catherine Hershey. The Deed of Trust provided that its purpose was "founding and endowing in perpetuity an institution to be known as 'Milton Hershey School.'" It also stated that the Trust Company (Trust), with the approval of the School, had sole and exclusive authority over investment management. Currently, over 58% of the Trust's asset allocation is in Hershey Foods Corporation and it has attempted over the years to diversify its holdings. Because the Trust holds 77% of the voting power of all outstanding shares of Hershey Foods Corporation, it has a controlling interest in the company. Re-

cently, the Trust and the School authorized their Investment Committees to explore alternatives regarding the sale of the Hershey Foods stock held by the Trust, including a sale of Hershey Foods Corporation, to diversify their portfolio. Determining that the sale of its stock in the Hershey Foods Corporation was prudent, the sale process began in mid–2002.

On August 12, 2002, the Attorney General filed a Petition for Citation for Rule to Show Cause why a proposed sale of Trust assets constituting the controlling interest in Hershey Foods Corporation should not be conditioned on court approval. The citation was issued by the Orphans' Court Division of the Court of Common Pleas of Dauphin County (trial court) on August 19, 2002. On August 23, 2002, the Attorney General filed a Motion for Special *ex parte* Injunctive Relief based on the petition, seeking to enjoin the Trust and the School from disposing of their holdings in Hershey Foods Corporation without court approval. The trial court held a hearing after which it granted the Attorney General's motion and preliminarily enjoined the Trust from entering into an agreement to dispose of its shares of Hershey Foods Corporation. Specifically, the order provided the following:

AND NOW, this 4th day of September, 2002, the petition for special injunctive relief filed by D. Michael Fisher, Attorney General of the Commonwealth of Pennsylvania, is GRANTED.

We hereby Order and Direct that pending disposition of the citation issued by the Court on August 19, 2002, and/or further order of this Court, the Board of Managers of the Milton Hershey School and the Hershey Trust Company as Trustee of the Milton S. and Catherine S. Hershey Trust, respondents, shall not enter into any agreement or other **understanding** that would or could commit the respondents to a sale or other disposition of any or all of the shares of Hershey Foods Corporation held as corpus of the Trust. (Emphasis added.)

By precluding even an "understanding," not only did the trial court preclude an agreement that could be brought to court for approval, but it also precluded any discussion leading to an agreement to bring an agreement to court. The Trust appealed, and the trial court denied a request for a stay pending appeal. The Trust now seeks a stay from this court as well as expedited consideration of the merits of its appeal.

The majority affirms the trial court's order, dismisses the Trust's application for a stay and directs the trial court to rule on the merits of the controversy. It does so disregarding the Trust's argument that the Attorney General has no authority to participate in the decision-making process of the Trust under the guise of protecting the public. Instead, it states that while this is an important issue, it is not the focus of review because all that must be determined is whether the trial court had "apparently reasonable grounds" to support its decision to grant the preliminary injunction.[1] Adopting the reasoning of the trial court and stating that in the interest of mitigating any harm to the Trust or the public interest, the majority determines

1. In order to grant a preliminary injunction, it must be proven 1) that the injunction is necessary to prevent immediate and irreparable harm that could not be compensated by damages; 2) that greater injury would result by refusing the injunction than by granting it; 3) that the injunction restores the parties to the status quo that existed immediately before the alleged wrong; 4) that the wrong is manifest and the injunction is reasonably suited to abate it; and 5) that the applicant's right to relief is clear. *City of Philadelphia v. District Council 33*, 528 Pa. 355, 598 A.2d 256 (1991).

that because it cannot conclude that no reasonable grounds exist to support the trial court's order, it must affirm the trial court's grant of the preliminary injunction.

The basis for the majority's holding is that based on our narrow scope of review, we must uphold the trial court's grant of a preliminary injunction if it had "apparently reasonable grounds." Our scope of review over a trial court's grant of a preliminary injunction, however, is not only to determine whether the trial court's decision was reasonable, but also to determine whether the trial court has committed an error of law. *Temple University of the Com. System of Higher Education v. Allegheny Health Education and Research Foundation*, 456 Pa.Super. 314, 690 A.2d 712 (1997). While I do not disagree with the majority that the trial court decision is reasonable, before we can sustain a preliminary injunction, not only do we have to

find that the decree was reasonable, but we must also determine that the grant of the injunction was in accordance with the law; in this case, the Probate, Estate and Fiduciaries Code (PEFC).[2]

The decree is not accordance with law because nowhere in the PEFC is there any authority for the Attorney General to essentially act as co-trustee or co-manager of the Trust and be part of the process leading up to a decision by the Trustees to take a certain action. Nonetheless, the trial court determined that the Attorney General had standing to proceed and authority to inquire as to whether the Trust's exercise of its power was inimical to the public interest because "responsibility for the public supervision of charitable trusts traditionally has been delegated to the Attorney General to be performed as an exercise of his *parens patriae* powers."[3]

---

2. 20 Pa.C.S. §§ 101–8815.

3. The sole legal basis for the trial court's holding is *Coleman's Estate*, 456 Pa. 163, 317 A.2d 631 (1974), *Estate of Pruner*, 390 Pa. 529, 136 A.2d 107 (1957), and *McKee Estate*, 378 Pa. 607, 108 A.2d 214 (1954). It found that the Attorney General is authorized under his *parens patriae* powers to inquire whether an exercise of a trustee's power, even if authorized under the trust instrument, is inimical to the public interest. Those cases, however, do not stand for the proposition that the Attorney General, in exercising his *parens patriae* powers, can take action to see that some non-trust goal is accomplished.

In *Coleman Estate*, the issue was whether a settlor could impose upon the courts the task of monitoring his wish that no person serve as an individual trustee of an irrevocable inter vivos charitable trust that was married to a non-Protestant. Noting that the settlor's partiality for the religious persuasion of the trustee's spouses was unrelated to his dispositive scheme, the Supreme Court held that the litigation regarding the settlor's preference bore no relationship to the proper administration of the trust and burdened the judicial process. This case has no application to the facts before us now.

In *Estate of Pruner*, the Supreme Court held that the heirs of a reversionary devisee for termination of a charitable trust had failed to comply with requisite procedures by including the public, an indispensable party, in its action to terminate the trust. In that case, Pruner devised real estate in trust to establish a home for orphans but specified that the property was to revert to his niece if the provisions of the will could not be carried out. The heirs instituted an action to terminate the trust because no children had been cared for in the home during the past seven years. The Supreme Court held that the trust could only be terminated if shown that there were no children from the area who could qualify for the home, and because the public was the object of the settlors' benefactions and the public had not been given notice, the matter could not be decided. This case only supports a finding that the Attorney General may act within his *parens patriae* powers on matters that affect the individuals who are to have benefited from the trust, in this case, the School, not the public at large.

Finally, in *McKee Estate*, the Court was asked to review a trust that was unable to be carried out. John McKee indicated in his will that after the deaths of all of his children and grandchildren who were living at the time of

(Trial court opinion at 6.) However, for the Attorney General to properly exercise *parens patriae* powers, his concern must be on behalf of the public *and* tied to the express desires of the Trust settlor. *See Commonwealth v. Barnes Foundation*, 398 Pa. 458, 464, 159 A.2d 500, 503 (1960) (in case involving art collection held by charitable foundation, "essential element of public charity is the right of public visitation for correction of abuses *and enforcement of founders' will*"). The Deed of Trust specifically gives the Trust Company, with approval by the School, sole and exclusive authority over the management of investments, including the sale of stock. Paragraph 5 of the Trust provides:

> The funds of the principal in the trust estate and the unexpended income of the property held in trust, not immediately needed for the purposes of the School, shall be vested, and the Trustee at all times by and with the authority and approval of the Managers shall have full power and authority to invest all or any part thereof in any securities which the Trustee and the Managers together may consider safe...

Absent a showing that the Trustee's actions are against the terms of the Trust or that the Trust provisions themselves are against public interest, the *parens patriae* powers of the Attorney General do not apply.

Additionally, Section 7141 of the PEFC, 20 Pa.C.S. § 7141,[4] gives the Trust the power to sell any property of the Trust, and Section 3355 of the PEFC, 20 Pa.C.S. § 3355, expressly limits the authority of a court to restrain a sale of a trust asset that is authorized under the governing Deed of Trust. That section provides:

> The court, on its own motion or upon application of any party in interest, in its discretion, *may restrain* a personal representative from making any sale under an authority *not given by the governing instrument* or from carrying out any contract of sale made by him under an authority not so given. (Emphasis added.)

Under this provision, the only power the court is given is to restrain a sale, not to foreclose the Trustees from reaching an agreement to be approved, let alone what the trial court did here by foreclosing any meaningful negotiation that will lead to an *understanding* that can be brought to the court for approval. Moreover, there is no basis in the law, either statutory or case, giving the Attorney General a right to become "fully involved" in the decision-making of the Trust; he is neither a co-manager nor co-Trustee of the Trust. Once the Trustees exercise the discretion given to them and reach an agreement, only then can the Attorney General take action to challenge the agreement by arguing it violates the terms of the Trust. *See* Orphans' Court Rule 5.5 (The Attorney

---

his death, his residuary estate should be used to establish and maintain a naval school to be known as the Colonel John McKee's College. When the last grandchild had died, it was determined that there were insufficient funds to establish the college but the amicus curiae recommended that the money be used for scholarship purposes. The surviving descendents attacked the validity of the will regarding the college, arguing that the will was void if the purpose of the trust could not be carried out. The Court disagreed and concluded that the scholarship plan was fair and reasonable.

All this case stands for is the proposition that the Commonwealth/Attorney General may enforce the terms of a charitable trust, not that it has rights to protect the public at large.

4. 20 Pa.C.S. § 7141 provides in relevant part:

> Except as otherwise provided by the trust instrument, the trustee, for any purpose of administration or distribution, may sell, at public or private sale, any real or personal property of the trust.

General shall be given notice at least 15 days in advance of every proceeding in Orphans' Court involving or affecting a charitable interest). Until an agreement is negotiated, terms made final, and covenants known, it is impossible to know what or if there would be negative effects from any sale. If that is not the law, then the Attorney General, under his understanding of his *parens patriae* powers, can become fully involved in the decision-making of any charitable institution in this Commonwealth.

Accordingly, for the foregoing reasons, I dissent and would reverse the trial court's grant of a preliminary injunction.